# Central of Georgia Railway Co. v. Ellison.

## Death Action.

(Decided December 21, 1916.  Rehearing denied May 17, 1917.
75 South. 159.)

1. **Railroads; Injuries to Trespassers on Track; Duty of Trainmen.**—While plaintiff's intestate's negligence in being on the track would defeat recovery for initial negligence, yet plaintiff could recover if railroad's servants in charge of the train became aware of intestate's peril in time to avoid running over him, providing intestate was free from negligence after becoming conscious.

2. **Railroads; Operation of Trains; Duty of Trainmen to Trespassers.**—Until intestate, a trespasser, had been seen and discerned to be a human being, the railroad engineer was under no obligation to check or stop his train.

3. **Evidence; Credibility of Witnesses.**—Although both railroad engineer and fireman testify for plaintiff that they did not discover danger of intestate, a trespasser on track, in time to avoid injuring him, jury may infer from other evidence that they did.

4. **Witnesses; Contradicting Testimony of One's Witness; Employee of Adverse Party.**—Although plaintiff, in a suit for death of her intestate, introduced defendant's engineer as her own witness, she could prove that engineer was in error as to a part or all of his testimony.

5. **Trial; Argument of Counsel; Credibility of Witnesses.**—Permitting plaintiff's counsel in closing argument, over defendant's objection, to say of defendant's engineer that he was not going to swear he saw the man was not reversible error, where it might have been in response to defendant's remark that plaintiff was bound by engineer's, plaintiff's witness, testimony.

6. **Trial; Argument of Counsel; Credibility of Witness.**—As plaintiff was not bound by all the testimony of defendant's engineer, although she called him, her attorney could properly argue that other evidence was more credible.

7. **Evidence; Opinion Evidence.**—Refusal to allow engineer to state on cross-examination that, if he had sounded the whistle, deceased would not have had time to get up was not error; it not being a matter for expert testimony.

8. **Trial; Instructions; Invasion of Province of Jury.**—In an action for the death of one klled on defendant's track, where it was proven beyond dispute that the track was straight for about a mile, that deceased was in a position of peril, and that engineer was looking ahead, an instruction that if intestate "was in a position of peril * * * and the track was straight for about a mile" from place of injury and engineer was looking ahead down the track from the time he came within view of intestate, "you would be authorized to infer" that he saw intestate " 'even though' he said that he was looking ahead and did not see him," providing intestate was in view of engineer, and could have been seen by him from the time he began looking down the track, was not an invasion of the province of the jury, nor an undue inference of fact by the court.

[Central of Georgia Railway Co. v. Ellison.]

9. **Trial; Instructions; Casting Discredit on Parts of Evidence.**—Such instruction was not bad as casting discredit or suspicion on certain parts of the evidence; the use of the phrase "even though" being necessary to give point and effect to the propositions of law being charged.

10. **Death; Punitive Damages; Wrongful Death; Excessive Damages.**—Under Homicide Statute (Code 1907, section 2486), damages recoverable for wrongful death are punitive and such "as the jury may assess," and a verdict thereunder of $16,000, for death of one killed on defendant's track is not so excessive as to indicate bias, prejudice, passion, or other improper motive.

APPEAL from Talladega Circuit Court.

Heard before Hon. HUGH D. MERRILL.

Action by Nannie Ellison as Administratrix, etc., against the Central of Georgia Railway Company for damages for the death of her intestate. Judgment for plaintiff and defendant appeals. Affirmed.

BARNES & BREWER for appellant. RIDDLE, BURT & RIDDLE for appellee.

PER CURIAM.—The action is under the homicide statute, to recover damages for the wrongful death of plaintiff's intestate. The case was tried on one count only, declaring on subsequent negligence; that is, negligence on the part of the agent or agents, servant or servants, of the defendant, after their discovery of the peril of intestate, who, at the time he was stricken, was a trespasser on the defendant's track, he being stricken by a passenger engine running at the rate of about 25 miles an hour. The defendant pleaded the general issue and contributory negligence on the part of the intestate; that is, that he remained on the track or in dangerous proximity thereto, after consciousness of the impending peril of the approaching train. The trial resulted in a verdict and judgment in favor of plaintiff for $16,000. The defendant moved for a new trial on several grounds, among them, that the verdict was excessive; and, its motion being overruled, the defendant appeals, assigning various errors.

The plaintiff did the usual thing of introducing as a witness the defendant's engineer who was operating the engine on the fatal occasion. If his testimony was in all parts true, the defendant was not liable. It was, in effect, that he was at the time keeping a vigilant lookout, and that he did not discover the intestate or his peril until the engine was within 30 or 40 feet of him, and

[Central of Georgia Railway Co. v. Ellison.]

that it was thereafter impossible, to the most skillful operators, with good appliances, to prevent killing or injuring the deceased. There was other evidence, however, conflicting with parts of the evidence of the engineer, which made it a question for the jury whether or not the engineer actually discovered the peril of intestate in time to prevent the injury by the exercise of the diligence and effort which the law in such cases requires.

(1) The following propositions of law, applicable to this case, have been stated so often that it seems useless to restate them or to cite the cases; but we will state some of them and cite some of the cases. The rule as laid down by this court, as in other jurisdictions, including England, is that, while the plaintiff's intestate's negligence in being on the track would defeat a recovery for initial or antecedent negligence, yet plaintiff could recover if defendants' servants, in charge of the train, became aware of the intestate's peril in time to avoid running over him, by the proper use of preventive means at their command, and negligently failed to resort to such means, to conserve his safety, provided the intestate himself was free from negligence after becoming conscious of his danger.—*Alabama Great Southern Ry. Co. v. McWhorter*, 156 Ala. 269, 47 South. 84; *Louisville & N. R. Co. v. Young*, 153 Ala. 232, 45 South. 238, 16 L. R. A. (N. S.) 301; *Central of Georgia Ry. Co. v. Foshee*, 125 Ala. 199, 25 South. 1006; *Louisville & N. R. Co. v. Brown*, 121 Ala. 227, 25 South. 609, and cases there cited; *Cen. Ga. Ry. v. Blackmon*, 169 Ala. 308, 310, 53 South. 805; 7 Mayf. Dig. 769.

(2) According to the authorities: "The test of responsibility is, Did the striking of the intestate, by the engine, occur after the engineer had seen—not might or ought to have seen—that is, discovered or distinguished, the intestate? Until the intestate had been seen, discerned, to be a human being, the engineer was under no obligation to the trespasser to check or stop his train, whatever might have been his duty to passengers on the train, or to persons rightfully using the track."

When the engineer is made aware of the presence and peril of a trespasser, by seeing him, he willfully, wantonly, or intentionally does him hurt at the peril of his employer; but, until made aware of the presence and peril of the trespasser by seeing him, there could not be willful or wanton misconduct toward him, nor an intentional injury done him, except under certain conditions of place, which have not been shown in this case.

*Shelton's Case,* reported in 136 Ala. 191, et seq., 34 South. 194, was one in which the facts were somewhat similar to those presented in the case at bar, in that there, the engineer and the fireman testified that they were keeping a lookout in front of the engine, and did not see the intestate in time to prevent the injury, and it was a question whether the case should have been submitted to the jury. McClellan, C. J., said: "The important question yet remains: Did the engineer or fireman actually see him in this perilous position? Or, rather, does the evidence we have detailed afford the basis for an inference by the jury that one or both of them did testified that they did not see him or anybody on the track at that time and place. But might not the jury find to the contrary notwithstanding? We think so. The jury were not bound to believe or disbelieve the testimony of these witnesses in its entirety. They could believe that they were looking ahead at the time, and that they could have seen a man on the track, and disbelieve their statements that they did not see any one on the track. And the conclusion on the evidential tendencies under consideration would be drawn thus: Shelton was in a position of manifest peril on the track in front of the engine. He was in view of the enginemen. They were looking along the track where he was. Therefore, they must have seen him, and this though they testify that they did not.— *Ensley Railway Co. v. Chewning,* 93 Ala. 24, 31 [9 South. 458]; *Louisville & Nashville Railroad Co. v. Trammell,* 93 Ala. 350, 354 [9 South. 870]."

*Shelton's Case* has been repeatedly followed.

(3) There must be in such cases, however, some evidence in conflict with that of the persons in control of the engine, car, or agency which inflicts the injury, or other proven facts by such persons, or other witnesses, from which the jury would be authorized to infer that the peril was discovered within time to prevent injury, by the exercise of the care and the means which the law requires in such cases. The jury in such cases are not authorized to arbitrarily infer that the peril was sooner discovered, when there is no evidence or facts to warrant such inference. These cases are pointed out by Dowdell, J., in the case of *Johnson v. B. R., L. & P. Co.,* 149 Ala. 538, 43 South. 33, where he says: "There must be actual knowledge of the peril; otherwise there can be nothing upon which to predicate subsequent negligence. The principle is the same in cases where simple neg-

ligence after discovery of peril is relied on, as in cases of wantonness or intentional wrong.—*Glass v. M. & C. R. R. Co.*, 94 Ala. 588, 10 South. 215; *Nave v. A. G. S. R. R. Co.*, 96 Ala. 267, 11 South. 391. Of course, this actual knowledge may be inferred from the existence of other facts, shown in the evidence; but the existence of such facts should not rest purely in conjecture or speculation. The evidence in this case, we think, differentiates it from those cases relied on by the appellant, viz: *Sou. Ry. Co. v. Bush*, 122 Ala. 486, 26 South. 168; *B. R. & E. Co. v. Smith*, 121 Ala. 355, 25 South. 768; *Robinson Mining Co. v. Tolbert*, 132 Ala. 462, 31 South. 519; *Sou. Ry. Co. v. Shelton*, 136 Ala. 191, 34 South. 194; *Central of Ga. Ry. Co. v. Partridge*, 136 Ala. 587, 34 South. 927—and brings the case more nearly within the influence of cases of *Nave v. A. G. S. R. R. Co.*, 96 Ala. 267, 11 South. 391, and *Ga. Pac. Ry. Co. v. Ross*, 100 Ala. 492, 14 South. 282."

Above are cited the cases in which it was held that the jury may infer discovery of peril within time to prevent the injury, though the engineer and fireman testify they did not so discover it, as well as cases in which it was held that the jury are not authorized to so infer.

(4) As before stated, the plaintiff introduced the engineer as her own witness; but this did not change the rule to such an extent that plaintiff was conclusively bound by all the testimony given by such witness. The plaintiff could prove by other witnesses that the engineer was in error as to a part, or all, of his testimony, and prove a contrary state of facts by other witnesses. It is very true that when a party introduces a witness in proof of his case, he thereby represents the witness as a person worthy of belief, and the law will not allow him to discredit his own witness by proof of general bad character, by proof of even bad character for truth and veracity, or by proof to show the witness to be unworthy of belief. By introducing the witness he vouches for his character as one worthy of belief, and he will not be afterwards heard, unless he has been taken by surprise, to show the contrary. There are, however, other exceptions to the rule, unnecessary here to be mentioned. The rule is that the party who calls a witness shall not be permitted to impeach his general character, because that must be supposed to have been known before he was called; and it is very unfair to call a man of bad character, with a view to avail yourself of his evidence, if it proves favorable, at the same time that you have the means of

discrediting him, if it proves unfavorable. Such conduct is a fraud on the administration of justice, and therefore not to be tolerated.—*Cowden v. Reynolds,* 12 Serg. & R. 283; 7 Mayf. Dig. 970.

Where the adverse party is called and examined by his opponent, he may not be impeached, although his testimony may be contradicted.—*Holden v. Minnesota,* 137 U. S. 487, 11 Sup. Ct. 143, 34 L. R. A. 734; *United States L. Ins. Co. v. Vocke,* 129 Ill. 557, 22 N. E. 467, 6 L. R. A. 65; 6 Mayf. Dig. 940.

By calling a witness, the party does not become forced to admit as true every fact to which he testified. While not at liberty to impeach his character for truth, he may dispute specific facts.—*Grand Street & N. R. Co. v. Long Island R. Co.,* 108 N. Y. 628, 15 N. E. 75; *McDonald v. Carson,* 94 N. C. 497; *Moffatt v. Lenney,* 17 Colo. 189, 30 Pac. 348; 6 Mayf. Dig. 940. See, also, *Coleman v. Siler,* 74 Ala. 435.

(5) Counsel for plaintiff, in the closing argument in the case, was permitted to say to the jury, over defendant's objection, "You know the engineer is not going to swear he saw the man." We are not prepared to say that this was error. The argument may have been in reply to argument of counsel, or of the defendant, which is made here; that, plaintiff's witness having testified that he did not see intestate within time to prevent the injury, plaintiff was bound by the testimony. If this was so, the argument was not only proper, but necessary to a correct presentation of plaintiff's case to the jury.

(6) We have shown that the plaintiff was not bound by all the facts testified to by the witness; that she could prove the contrary by other witnesses; and we know of no rule which would prevent the plaintiff's attorney from arguing that the other evidence was more credible. While the language used by counsel is possibly susceptible of the construction of assailing the character of the witness, which should not have been done by the plaintiff or her counsel, yet it is also susceptible of the construction which we have before indicated; and we are not willing to reverse the trial court in allowing it. This witness was personally interested in the matter inquired of, if not in the particular suit. If the railroad company was liable civilly, he, as the negligent agent, was also liable, both to the plaintiff and to the railroad company, and witness might have been, under certain

circumstances, liable criminally, under section 7665, et seq. of the Code.

In view of all these facts and questions we are not willing to pronounce this ruling error to reverse.

(7) It was not error to decline to allow the engineer to state, on cross-examination, that if he had sounded the whistle the deceased would not have had time to get up. This was not expert evidence; the witness' opinion formed on the subject was no better than that of the jury, if they had known the facts. The witness should have stated the facts, and let the jury draw the conclusion whether or not the deceased could have gotten up. Whatever the witness would have said would have been purely an opinion or conclusion touching a matter upon which he was no better prepared to express an opinion than any other person cognizant of the facts. He, of course, did know the facts, and could and should have stated them to the jury.

(8) The defendant excepted to a part of the oral charge of the court, which part is as follows: "If the plaintiff's intestate was in a position of peril on the track and the track was straight for about a mile west of where he was injured, and the engineer in charge of the train was looking ahead down the track, from the time that he came within view of the plaintiff's intestate, you would be authorized to infer from these facts and this testimony that he saw the plaintiff's intestate, even though he said that he was looking ahead and did not see him, provided plaintiff's intestate was in view of defendant's said engineer, and could have been seen by him from the time he commenced looking ahead down the track."

We are unable to find any error in this part of the charge; it seems to be a correct exposition of the law of this case, as we have before shown; we can see in it no invasion of the province of the jury, nor undue inference of facts by the court. Most all the facts hypothesized were shown without dispute; that is, that the track was straight for about a mile, that deceased was in a position of peril, and that the engineer was looking ahead. The other facts hypothesized, as to which there was dispute, were left to the jury to find; that is, the court told the jury what they could infer from the facts as to which there was no dispute, provided the intestate was in view of the engineer and could have been seen by him from the time he commenced looking ahead down the track.

(9) The use of the phrase, "even though," in this connection, did not render the charge bad to reverse. This, or some other phrase similar in effect, was necessary to give point and effect t o the proposition of law being charged. The facts hypothesized, and the propostion of law involved, distinguish this case from others holdings that the use of the word "even" renders such charges bad because casting discredit or suspicion on certain parts of the evidence. Such is not the effect or purport of the word "even," or of the phrase "even though," as here used. They or similar words were necessary to state the proposition of law as to when the jury might infer facts different from those to which the engineer testified.

The charge is distinguishable from the charge ruled bad in *Manley's Case*, 191 Ala. 531, 68 South. 60. Moreover, the undisputed facts in the two cases are different, the hypothesized facts are different, and the propositions of law attempted to be charged or stated are different. In *Manley's Case*, referring to similar charges ruled upon in *Holland's Case*, 173 Ala. 675, 55 South. 1001, it was said that, the refusal of such charges was simply justified, and that the opinion does not indicate that the giving of same would have been reversible error.

(10) While the judgment in this case is very large, the statute makes the damages recoverable purely punitive, and expressly declares that the damages shall be such "as the jury may assess." The statute was passed to punish offenders, to the end of preventing homicides.

In *Buckalew's Case* it was said, construing this statute as to the amount and measure of damages: "The amount of the recovery * * * is left to the sound discretion of the jury, to be wisely and impartially exercised, in view of all the circumstances of the case shown in evidence."—112 Ala. 160, 20 South. 606.

This court, so far as we recall, has never set aside a verdict because excessive, in an action brought under this statute to prevent homicides; and it has declined to set aside a verdict for one cent because inadequate.—*L. & N. R. R. Co. v. Street*, 164 Ala. 155, 51 South. 306, 20 Ann. Cas. 877. The only instance we find in our reports, where a verdict in an action like this was set aside because excessive, in the case of *K. C., M. & B. R. R. Co. v. Sanders*, 98 Ala. 293, 13 South. 57, and that action was by the trial court, the verdict there being for $44,500 damages. No

[Central of Georgia Railway Co. v. Ellison.]

appeal appears to have been taken from that ruling; but the final verdict, which went to judgment, was for $13,500. The appeal from such judgment was affirmed; the trial court and this court declining to set the verdict aside because excessive.

It is very true that a verdict may be so excessive as to show that it was disproportionate to the wrong, and that it was induced by bias, prejudice, passion, or other improper motive. In such case no court, trial or appellate, ought to hesitate to set the verdict aside.

This and other courts have affirmed judgments in excess of the one in this case which is for $16,000. In most of these cases, actual as well as punitive damages were awarded, which fact, of course, distinguishes these cases from the one at bar, and those where the damages are purely punitive. The history of our statute shows that the Legislature intended to leave the amount of damages in these cases to the discretion of the jury, within reasonable limits, when not influenced by bias, prejudice, passion, or other improper motive. The damages in such cases were once compensatory and not punitive, and were once limited in amount, upward but not downward; but, as the statute has existed for a quarter of a century or longer, the damages are purely punitive, with no limitation except that they shall be such "as the jury may assess."

Statutes somewhat similar to this section of the Code were provided for by sections 1938-1941, both inclusive, of the Code of 1852, though the damages then were compensatory and limited, not to exceed three years' income of the deceased, and in no case to exceed $3,000; the damages recovered were for the benefit of the widow, if one, if not, for the children, and if no widow or children, for the next of kin. The act of February 21, 1860 (Acts 1859-60, p. 42), expressly repealed sections 1938 and 1939; and substituted therefor the statute making the damages punitive, such "as the jury deem just," and making the damages distributed as personal property of the intestate, and making it exempt from the payment of debts. This last statute, by oversight, it is said, was omitted from the Code of 1867 entirely, and sections 1938 and 1938 were retained and remained the law up to February 5, 1872 (Acts 1871-72, p. 83) when the Legislature re-enacted the homicide statute, which was in all material respects identical with the former act, and was codified in the Code of 1876 as section 2641, and omitting sections 1938

and 1939 of the Code of 1852, which were, respectively, numbered 2297 and 2298 of the Code of 1867, thus repealing said sections. This statute next appeared as section 2589 of the Code of 1886, which combines sections 2641, 2642, and 2643 of the Code of 1876, which sections were, respectively, 2299 and 2300 of the Code of 1867 and sections 1940 and 1941 of the Code of 1852; and section 2589 of the Code of 1886 is substantially brought down in the Code of 1896, and appears as section 27 thereof. The Supreme Court has construed this statute to be punitive in its nature and purpose, and not compensatory, and that the damages recoverable are distributed under the laws of distribution as other personal property of the deceased, and that they are not liable to the payment of debts of the deceased.

We are not persuaded that we should disturb the verdict in this case, which was fixed by the jury and approved by the trial court. We are not impressed that it was induced by bias, prejudice, passion, or other improper influence.

Affirmed.

ANDERSON, C. J., and MAYFIELD, SOMERVILLE, and THOMAS, JJ., concur.