Harbor Master and Port Wardens of Mobile v. Captain Southerland.

the whole law upon the subject of the partition of lands held by tenancy in common in this State.

The judgment of the court below is therefore affirmed, with costs.

# HARBOR MASTER AND PORT WARDENS OF MOBILE *vs.* CAPTAIN SOUTHERLAND.

[ACTION TO RECOVER FEES, &C., BY HARBOR MASTER AND PORT WARDENS.]

1. *Presumption in favor of correctness of court below.*—The judgment of an inferior court is presumed to be right, and if the record is so defectively made up that it can not be told whether it is right or wrong, the judgment will be affirmed.

2. *City corporation, ordinances of; supreme court can not take judicial notice of.*—This court can not judicially know what the laws and ordinances of a city corporation are, and if not set out in, and made a part of the record, they can not properly be considered in disposing of a case on appeal.

3. *Harbor master's fees, as fixed by ordinances of Mobile and act of March 3, 1870 ; when can be recovered.*—By the ordinance of the city of Mobile passed the 22d of April, 1870, entitled "An ordinance regulating and fixing the harbor master and port wardens' fees, in the port of Mobile, as per act passed by the legislature authorizing the same, approved March 3d, 1870," the harbor master's fees specified in said ordinance are only to be paid when the services of the harbor master and port wardens become necessary, and are actually rendered or offered to be rendered.

4. *Act of 3d March, 1870, and ordinances thereunder ; mere police regulations.*—The said act of the 3d March, 1870, and the said ordinance, properly interpreted and understood, are police regulations merely, and are not in conflict with or repugnant to the constitution of the United States.

APPEAL from Circuit Court of Mobile.

Tried before Hon. JOHN ELLIOTT.

THIS is an appeal from a judgment rendered by the circuit court on a case brought in that court, on appeal of the appellee, to reverse a judgment by default recovered against Southerland by the harbor master and port wardens of Mobile before a justice of the peace. There was no complaint filed in the circuit court, but the appellee pleaded as follows:

"1. General issue in short by consent.

"2. That no service or duty of any kind was ever rendered by said plaintiffs for said ship.

"3. That no service or duty was ever requested by said defendant, or by any one, on behalf of said ship, of, or from, said plaintiffs, and none was necessary; that said ship is an American ship, owned in New York, and came into this port with freight to consignees in Mobile; that she was piloted over the lower bar and anchored in said lower bay by a licensed pilot; that said anchorage is twenty-five miles from Mobile, not within the corporate limits of Mobile, and is from four to seven miles in width and breadth, and ships lay at great distance from each other; that no police regulations in said lower bay are necessary or proper; and that the fees claimed in said complaint are illegal, of no value, and the said act of the legislature of the State of Alabama, is as to the defendants in this case, inoperative and void; wherefore, &c."

There also appears in the record an ordinance, which is as follows:

"An Ordinance, regulating and fixing the harbor master and port warden's fees in the port of Mobile, as per act passed by the legislature authorizing the same, and approved March 3d, 1870.

"Sec. 1. For every steamer or sailing vessel of any description whatever that may come within the bay of Mobile, or within the corporate limits of the city of Mobile, for the purpose of either discharging or loading, or both, of freight of any description, and anchor in the lower bay, or proceed to the city, shall be subject to the following rates of harbor master's fees, independent of surveys, in-

spections, certificates, &c., already provided in the city charter."

Then follows various items of fees allowed, according to tonnage.

"Sec. 2. *Be it further ordained*, That all other port fees for surveys, inspections, certificates, &c., shall be the same as now provided for by that part of section 81 of the city charter designating the same.

"Approved 22d April, 1870."

There is an agreed statement of facts, which is as follows

"That by the act of March 3d, 1870, and all the laws. and ordinances of the city of Mobile which are in evidence, the harbor master of the port of Mobile went on board of the ship H. Cook, of which Henry Southerland is master, and offered his services to regulate and station said ship in the bay of Mobile, and did regulate and station said ship, while said ship was not employed in receiving or discharging her cargo; that at the time this occurred, the ship was within the bay of Mobile, and in the port of Mobile, between the outer bar and Dog river bar, about four miles north from Fort Morgan, which is at the mouth of Mobile bay; that the said captain said that he did not wish the services of the harbor master, and that his services were not necessary; the harbor master, however, did regulate and station the said ship, by assigning her the place she occupied when the harbor master acted; that the ship was brought into the lower bay by a pilot, and anchored where she was; that the anchorage where she lay was twenty-five miles from Mobile city, not within the corporate limits, and the anchorage where she lay is from four to seven miles in width and length, and the service charged for has always, until the passage of said act, been performed by the pilots; that these facts apply to the case of the H. Cooke, which is an American ship, and to the barque Moreno, captain John Hopkins, an English ship. These three cases are brought here by appeal from the judgment of T. J. Burns, a justice of the peace for Mobile county, and if the court is of opinion that the harbor master is entitled to claim fees,

under the acts and ordinances, for services as herein set forth, then the judgment shall be rendered for the plaintiffs in all of the cases; if not, then judgment shall be rendered for the ship captains, and either party may appeal."

This is a full report of everything contained in the transcript which has any bearing whatever in the case.

The court rendered judgment in favor of the appellee, and hence this appeal.

◦ ALEX. McKINSTRY, for appellant.
JOHN T. TAYLOR, for appellee.

(Neither brief came into Reporter's hands.)

PECK, C. J.—The record in this case is so imperfect and so defectively made up, that it is impossible to tell whether the judgment of the circuit court is right or wrong. Where it does not manifestly appear from the record that the judgment is wrong, we are bound to presume it is right. This judgment must, therefore, be affirmed.

The statement of facts says, "That by virtue of the act of March 3d, 1870, and all the laws and ordinances of the city of Mobile which are in evidence, the harbor master of the port of Mobile went on board the ship H. Cooke, of which Henry Southerland is master, and offered his services to regulate and station said ship in the bay of Mobile," &c. Now, we do not judicially know what "all the laws and ordinances of the city of Mobile" on this subject are, and, as they are not set out in the statement of facts, they can not properly be considered in disposing of the case. But, as we understand the main purpose of this appeal is to obtain a construction of the said act of the 3d of March, 1870, referred to, and an ordinance of said city having reference to said act, and copied in the record, approved by the mayor on the 22d of April, 1870; and as it is manifest, from this case, that doubts are entertained as to the meaning of and validity of said act and ordinance; to prevent future litigation, as far as possible, we proceed to state what appears to us to be the proper interpretation and legal effect of said act and ordinance.

The act is entitled, "An act to extend the jurisdiction, powers and duties of the harbor master and port wardens of Mobile." The first section enacts that "from and after the passage of this act, all laws and parts of laws creating a harbor master and port wardens for the port of Mobile be, and the same are hereby made to extend to and include all vessels coming into the bay of Mobile; and the said harbor master and port wardens shall discharge the same duties to, and receive from said vessels the same fees, as though they were lying at the wharves of the city of Mobile."

The second section is as follows: "That from and after the passage of this act, the words 'tonnage dues,' whenever they occur in the city charter and code of ordinances, and in all the acts relating to the harbor master and port wardens of the city of Mobile, shall be stricken out, and in lieu thereof, the words "harbor fees" inserted; and that the number of such port wardens, their fees and rates of compensation in the city and bay of Mobile, shall be changed and fixed by the corporate authorities as they may deem necessary and expedient."

The said ordinance referred to is entitled, "An ordinance regulating and fixing the harbor master's and port wardens' fees in the port of Mobile, as per act passed by the legislature authorizing the same, and approved March 3d, 1870." The first section is as follows, to-wit: "For every steamer or sailing vessel of any description whatever, that may come within the bay of Mobile, or within the corporate limits of the city of Mobile, for the purpose of either discharging or loading, or both, of freight of any description, and anchor in the lower bay, or proceed to the city, shall be subject to the following rates of harbor master's fees, independent of survey, inspection, and certificates, already provided for in the city charter." Then follows a list of fees, ranging from one to fifty dollars, according to the tonnage of the different vessels.

If this act, and the said ordinance passed by the city authorities of Mobile, really mean that every steamer or sailing vessel that comes into the bay and harbor of Mo-

bile for the purpose named in said ordinance, must pay the fees therein specified, whether the services of the harbor master and port wardens, or either of them, become necessary, or not, and when no services are in fact rendered, then we are prepared to pronounce the said act and ordinance unconstitutional. If no other reasonable construction can be given to said act and ordinance, then they amount to a regulation of commerce, and are in conflict with the constitution of the United States on this subject. *Steamship Company v. Port Wardens*, 6 Wall. 31.

But, we think a different construction may be reasonably given to said act and ordinance—a construction that will relieve them from any constitutional objections.

Courts are bound, if possible, to give a statute such a construction as will enable it to have effect, and in doing this, they may lean in favor of such an interpretation of the language used as may not, at first view, seem to be its most obvious and natural import.—Cooley Con. Lim. 184.

An act of the legislature is to be so construed, if possible, as to make it consistent with, and not repugnant to, the constitution (*Dow v. Norris*, 4 N. H. 17); therefore, whenever an act can be so construed and applied as to avoid a conflict with the constitution, it should be done, and never declared unconstitutional, if it can be upheld by any reasonable intendment or allowable presumption.—*The People v. The Supervisors of Orange*, 17 N. Y. 241.

Applying these rules of construction to the said act and ordinance, we think they may reasonably be interpreted to mean, that every steamer or sailing vessel that may come within the bay of Mobile, or within the corporate limits of the city of Mobile, for the purpose of either discharging or loading, or both, of freight of any description, and anchor in the lower bay, or proceed to the city, and the services of the harbor master or port wardens, or either of them, become and are necessary to station said steamer or sailing vessel, or, when stationed, to change its location, or when any other services usually rendered by such officers become necessary, and are actually rendered, or offered to be rendered, then such steamer or sailing vessel shall be

subject to the rates of harbor master's fees mentioned in said ordinance, and not otherwise.   So construed, said act and ordinance become police regulations merely, and are relieved from all constitutional objections.

The fact that the said ordinance calls these charges *harbor master's fees*, is, it seems to us, an index to its intent and meaning, and justifies the interpretation we have put upon it.   Why call them harbor master's fees, unless the harbor master is required to render services to entitle him to receive them?   The meaning of the word "fees" is, a recompense allowed by law to officers for their labor and trouble, &c.—2 Bac. Abr. 463.   Therefore, where there is no labor or trouble, no necessary services rendered, or offered to be rendered, no fees should be, or can be, properly allowed.

Let the judgment of the court below be affirmed at the appellant's costs.