(79 South. 489)

STANDARD OIL CO. v. CITY OF BIRMINGHAM. (6 Div. 782.)

(Supreme Court of Alabama. May 30, 1918.)

1. EXPLOSIVES ☞2—GASOLINES, BENZINES, NAPHTHAS—VALIDITY OF ORDINANCE.

An ordinance providing for the inspection of gasolines, benzines, naphthas, and requiring the specific gravity thereof at 60 degrees Fahrenheit to be between 58 and 84, is void for uncertainty, and because unreasonable and impossible of performance; the specific gravity of heaviest substance known being only 22.5.

2. EXPLOSIVES ☞3—ORDINANCES—CONSTRUCTION.

An ordinance that "gasolines, benzines, and naphthas shall have a specific gravity at 60 degrees Fahrenheit of not less than 58 or more than 84," being clearly expressed and unambiguous, will not be construed as if the word "specific" was omitted, and the words "degrees Baume" added at the end, or as though there was a decimal point before the 58 and 84, although, being unreasonable and incapable of performance as it stands, it would, by such construction, be made reasonable and capable of enforcement.

3. MUNICIPAL CORPORATIONS ☞120 — ORDINANCES — CONSTRUCTION—WORDS OMITTED—GRAMMATICAL AND TYPOGRAPHICAL ERRORS.

In construing an ordinance, courts may supply words by construction, or substitute one for another, where it appears that a typographical or grammatical error has been made, and where, construed as a whole, the ordinance is self-correcting, but not to correct legislative errors.

4. EXPLOSIVES ☞1—POLICE POWER—USE OF GASOLINE—REGULATION.

A city has no power to absolutely prohibit the use of gasoline, benzine, and naphtha, but merely to regulate and control the sale, use, and disposition thereof.

5. MUNICIPAL CORPORATIONS ☞120 — ORDINANCES—CONSTRUCTION—EXTRINSIC AID.

Where scientific or technical words or terms are used in an ordinance, extraneous evidence is proper to show meaning thereof, but not to instruct court as to word or phrase lawmakers should have used to make the law reasonable.

Appeal from Circuit Court, Jefferson County; John H. Miller, Judge.

Action by the city of Birmingham against the Standard Oil Company, to recover inspection fees for the inspection of oils, etc. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The ordinance is to further provide for the weighing and measuring of products herein named, and for the collection of inspection fees for such weighing and measuring. The first section refers to feed either for stock or poultry; the second, to vegetables sold or offered for sale, in packages less than a barrel; the third, of breads manufactured from wheat flour; the fourth, to butter; the fifth, to false scales, weights, etc.; the sixth, to hardware; the seventh, to loose lime in barrels; the eighth sufficiently appears from the opinion; the ninth, to empty barrels, casks, or tanks, or other vessels having the city inspector stamp, brand, or label them; the tenth, that the city shall furnish all instruments, apparatuses, etc. Sections 11, 12, and 13 provided:

(11) It is the duty of the consignee of petroleum, coal or mineral oils received in the city of Birmingham to notify the inspector when said oil is received by them and is ready for inspection. The city inspector or his assistant shall inspect, test, mark. brand, stamp or label mineral or coal oil kept, sold or offered for sale in said city for illuminating or heating purposes, and if upon making such inspection or tests he finds the oil to meet the requirements of this ordinance, he shall mark on each package so tested, showing it passed inspection with his official signature and date of inspection. But if the inspector finds any oil that does not come up to the standard herein required, he shall mark the same condemned and put thereon his official signature and date of inspection.

(12) The inspector or his assistant are authorized to enter any place of business during business hours and procure samples of oil for the purpose of testing same, or may detain vehicles delivering or selling oil for this purpose. The oil test shall be made with a Wisconsin tester or any other standard thermometer, and the test shall be made according to approved methods.

(13) As full compensation for inspecting oil, said inspector shall charge and collect as follows: For inspecting quantities less than two hundred gallons, 1½ cents per gallon; for inspecting more than 200 and less than 1,000 gallons, 1 cent per gallon; for inspecting in quantities of 1,000 gallons or more, ½ cent per gallon. It shall be the duty of said inspector, as soon as oil shall have been inspected and marked or branded, to make out a bill and collect for said inspection the charges hereinabove specified; and any person in charge of oil so inspected and marked to whom the bill may be presented, who refuses to pay the same, shall be guilty of a violation of this ordinance.

This ordinance is not a substitute for previous ordinances of inspection, but is an addition thereto.

Tillman, Bradley & Morrow, of Birmingham, and Roy M. Sterne, of New York City, for appellant. M. M. Ullman and W. A. Jenkins, both of Birmingham, for appellee.

MAYFIELD, J. The city of Birmingham sued appellant oil company to recover the inspection fees, for the inspecting of oils,

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
202 ALA.—7

gasolines, benzine, naphtha, etc. The payment was resisted on the grounds that the ordinance under which the inspection was made and the fees were fixed, and penalties were provided for failure to comply therewith, was void for uncertainty; that the ordinance was unreasonable, and that a compliance with some of its provisions is impossible; and that for these reasons the ordinance ought not to be enforced, even as for the collection of the inspection fees. The reporter will set out the ordinance in full, so that the questions raised and decided may be better understood. That part of the ordinance most urged as being void for uncertainty is part of section 8 as amended, and it reads as follows:

"Gasolines, benzines and naphthas kept for sale shall be subjected to the same supervision and control as is provided by this ordinance for coal or mineral oil or petroleum or products manufactured therefrom for illuminating or heating purposes, except that the inspectors shall only be required to test gasolines, benzines and naphthas by ascertaining their specific gravity at 60 degrees Fahrenheit, and such gasolines, benzines and naphthas shall have a specific gravity at 60 degrees Fahrenheit of not less than 58 or more than 84."

It is not denied that if this quoted part of the ordinance means what it says, it is void because unreasonable and impossible of performance. It is insisted by the city, however, that it does not say what it means— that it means, and should be construed as if the word "specific" before the word "gravity" were omitted, and the phrase "degrees Baume" were added at the end of the quoted provision. In other words, the contention of the city is that the part quoted above should be construed as if it reads as follows:

"Gasolines, benzines and naphthas kept for sale shall be subjected to the same supervision and control as is provided by this ordinance for coal or mineral oil or petroleum or products manufactured therefrom for illuminating and heating purposes, except that the inspectors shall only be required to test gasolines, benzines and naphthas by ascertaining their gravity at 60 degrees Fahrenheit, and such gasolines, benzines and naphthas shall have a gravity at 60 degrees Fahrenheit of not less than 58 or more than 84 *degrees Baume*."

It is also contended by the city that if the word "Baume" be inserted or added, just after the word "gravity," the uncertainty would be thereby removed, leaving the ordinance reasonable and capable of enforcement. Both parties introduced expert witnesses as to the meaning of the various words and phrases, "specific," "gravity," "Baume," "specific gravity," "degrees Baume," etc.

[1] It is certain that unless some word or words are omitted from the quoted provision, or some word or phrase is added thereto, it is void for uncertainty, or is wholly unreasonable and incapable of performance. Is this court authorized, in construing this provision in connection with the whole ordinance, and with the context, to omit, or to add, the words or phrases necessary to render the ordinance certain and definite enough to be valid and enforceable?

[2] It is agreed, if the court does not judicially know, that there is no gas, liquid, or solid, that has a specific gravity of 58, much less of 84. The specific gravity of platinum, the heaviest substance known, is only 22.5, so the expert witnesses and standard authorities on the technical subject inform us. So if the ordinance be construed literally as written, it requires the oils, or the products thereof, mentioned, to be more than twice as heavy as the heaviest substance known to science. Such an ordinance, of course, is unreasonable, and incapable of enforcement. To construe it as the city contends it should be construed would render it enforceable and probably reasonable. We know of no rules or canons of construction, however, which would authorize us to construe the language used in this ordinance to mean what the city contends it means. This trouble is the language used in the ordinance, standing alone, is not of doubtful meaning or interpretation; nor does it suggest any omissions of words or phrases to make it complete or carry out the intent of those who drafted or ordained it. If there were any oils, or products thereof, mentioned in the ordinance which would meet the specific gravity named, the ordinance would be perfectly valid, certain in meaning, and easy of enforcement. But the proof shows that there is no substance known to commerce or to science that can meet the tests required, and that the provision is therefore wholly unreasonable, as requiring the impossible. The city says we ought to construe it to apply to those very oils or products mentioned which have been inspected by it, and stored or sold in the city by the oil company. The infirmity of this insistence is twofold: First, it is agreed, or not disputed, that these oils did not have the specific gravity specified by the ordinance; second, that the language used in the ordinance is not susceptible of any reasonable construction which would authorize the application of the ordinance to the products inspected and for which charges are made and suit to enforce payment is brought.

Common or popular words are to be construed in their popular sense; common-law words according to their common-law meaning, and technical words according to their technical meaning. As a general rule, words are to be taken in their ordinary or popular sense, unless it plainly appears that they were used in a different sense. Mobile Dry Docks Co. v. City of Mobile, 146 Ala. 198, 40 South. 205, 3 L. R. A. (N. S.) 822, 9 Ann. Cas. 1229.

When the law is plain and unambiguous, whether it be expressed in general or limited terms, the Legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction. The court is not at liberty to search for prob-

able or possible meaning. Johnson v. State, 141 Ala. 7, 37 South. 421, 109 Am. St. Rep. 17; State v. McGough, 118 Ala. 166, 24 South. 395.

The construction of statutes or ordinances is correct that gives to each the effect which the makers intended. The intent of the lawmaker is the law. Courts are to construe and interpret the meaning and then declare the intent of the lawmaker, which is the law. If the meaning of the words used by the lawmaker is clear and certain, then there is no room or occasion for construction or interpretation. It is only when the meaning of the language and intent of the lawmaker is not obvious or certain that courts are needed or required to interpret. When the meaning of the language used, or the intent of the lawmaker rests in inference, then construction and interpretation are useful. If the meaning or intent is obvious and clearly expressed, then it does not rest in inference. The clearly expressed meaning or intent must and should prevail, though others could be assigned. If one meaning be certainly expressed, and another left to inference, the one expressed should prevail. Birmingham v. Southern Express Co., 164 Ala. 537, 51 South. 159.

The meaning and intention of a statute or ordinance must be gathered by the courts from the law itself, and not from the contemporaneous declarations of the individual lawmakers. Barnes v. Mayor of Mobile, 19 Ala. 707.

A literal interpretation will not be adopted, when it would defeat the purposes of a statute, if any other reasonable construction can be given to the words. Thompson v. State, 20 Ala. 54.

No principle is more firmly established or rests on more secure foundations than the rule which declares, when a law is plain and unambiguous, whether it be expressed in general or limited terms, the Legislature shall be intended to mean what they have plainly expressed, and consequently no room is left for construction. Bartlett & Waring v. Morris, 9 Port. 266.

Where a statute is plain and unambiguous, its history or the mischief intended to be remedied cannot be looked to to qualify its plain meaning and import. Kelly v. Burke, 132 Ala. 235, 31 South. 512.

It is very true, as is argued by the city, that courts will give ordinances or statutes that interpretation which will give them effect, if the language used is reasonably susceptible of such construction. As a rule, ordinances and statutes are to be given that construction which will uphold them if that construction be a reasonable one, and consistent with the language used. In a recent case, construing an ordinance of Birmingham, it was said:

"In determining the validity of ordinances, a reasonable construction will be given them; the judicial inclination being to sustain, rather than overthrow, them. 2 Dillon's Munic. Corp. (5th Ed.) § 646; Orme v. Tuscumbia, 150 Ala. 520, 43 South. 584. 'Ordinances must, by fair and natural construction, be certain to a common intent.' 28 Cyc. p. 354. 'Common intent' is defined as 'the natural sense given to words.' 1 Bouv. Law Dict.; Black's Law Dict." Sloss-Sheffield Co. v. Smith, 175 Ala. 260, 264, 57 South. 29, 30.

"Municipal ordinances are construed by the same rules as are statutes. Harbor Master, etc., v. Southerland, 47 Ala. 511; 28 Cyc. pp. 388, 389, and notes thereon. No reason appears why ordinances and by-laws may not avail of the principles whereby reference statutes are construed and given effect, provided, of course, the municipality has the power to ordain as undertaken." Id., 175 Ala. 265, 57 South. 30.

"'The fact that an ordinance covers matters which the city has no power to control is no reason why it should not be enforced as to those which it may control.' City Council, etc., v. Shaddox, 138 Ala. 263, 266, 36 South. 369; Ex parte Cowart, 92 Ala. 94, 9 South. 225; Kettering v. Jacksonville, 50 Ill. 39; Ex parte Byrd, 84 Ala. 17, 4 South. 397, 5 Am. St. Rep. 328. 'An ordinance, like a statute, may be valid in some of its provisions and invalid as to others.'" Id., 175 Ala. 267, 57 South. 30, 31.

"Whenever a question arises as to the reasonableness vel non of a municipal ordinance, which relates to a subject within the corporate jurisdiction, it will always be presumed to be reasonable, unless the contrary appears on the face of the law itself, or is established by proper evidence. Van Hook v. City of Selma, 70 Ala. 361, 45 Am. Rep. 85." Miller v. Birmingham, 151 Ala. 471, 44 South. 388, 125 Am. St. Rep. 31.

There was introduced by both sides a great deal of expert and technical evidence as to whether or not the ordinance was reasonable or enforceable. It would serve no good purpose to review it at length. The substance and conclusion of it all is that, unless the ordinance is construed as if the word "Baume" is read into it, or decimal points are read into it and placed before the numbers 58 and 84, so as to make them read 58 and 84 one-hundredths, the ordinance is unreasonable and unenforceable. If either of these changes is made, the ordinance would then be reasonable and enforceable; but, if both changes were made, the ordinance would still be unreasonable and incapable of enforcement. The ordinance would have as entirely different meaning, if the word "Baume" were read into it, from that which it would have if the two decimals were read into it as indicated. The main insistence in the argument of the city is rested upon the theory that the word "Baume," or the phrase "degrees Baume" should be read into the ordinance, because, as shown by expert and technical evidence, the provision would then indicate the usual method of testing gasolines, benzines, and naphthas, which is by a Baume hydrometer.

[3] It may be true, as argued by counsel, that those who wrote and ordained the ordinance intended that the test should be made by this instrument, and that it was a mere failure or omission of the draftsman to use the correct word or phrase; and that if the word or phrase be inserted by construction the ordinance is valid, whereas a failure

to insert the same by interpretation would strike down the ordinance. The answer to this is that the court does not know, and cannot know, the intent of the draftsman or those who ordained it, except by the language used in the particular text and context. To the expert and technical mind, it may appear that the word "Baume" or the term "degrees Baume" is to be read into the ordinance; but it does not so appear to the judicial mind, that must construe the ordinance in the language in which it is written, and not in the technical language in which it ought to have been written. Those who draft and enact or ordain laws must choose the language, and the courts must construe the language chosen, and not some other, that would lead to an entirely different result and conclusion. Courts may, and often do, supply words by construction, or substitute one for another; but only in a case in which the language used shows to the judicial mind that a typographical or grammatical error has been made, and in which, construing the instrument as a whole, it is self-correcting. Courts cannot by construction supply words or phrases, or strike out words or phrases, to correct legislative errors. The language used in the ordinance before us is not, on its face, ambiguous or doubtful of meaning. It is simpler and easier of comprehension to the ordinary judicial mind, as it is written, than it would be if the word or expression "Baume" or degrees Baume" should be added. The ordinary judicial mind is familar with the phrase "specific gravity," but only those possessing highly technical learning or knowledge would know what the ordinance meant if corrected as the city insists it should be, by construction. The meaning of the ordinance, instead of being clarified or rendered simpler and easier of interpretation by supplying the indicated word or words, is thereby rendered more technical and more difficult of interpretation by a merely judicial mind.

The evidence discloses the trouble of interpretation, and not the ordinance itself. Without the expert evidence in this case, no judicial mind, from repeated readings of the ordinance, would ever have suspected, much less discovered, that the word "Baume" or the phrase "degrees Baume" should be read into it, as the city now insists. The ordinary judicial mind might suspect that those who drafted the ordinance omitted to place the decimal point in front of the numbers 58 and 84; but never that the word "Baume" or the term "degrees Baume" should be read into the ordinance; or that the word "specific" should be omitted, and "Baume" added in lieu thereof.

[4] There is no trouble in ascertaining the meaning of the ordinance as it is worded; the trouble arises from the fact that there are no oils or products thereof to meet the requirements of the ordinance. To enforce the ordinance is to prohibit the use, sale, or disposition of the oils or products mentioned in the quoted provision of the ordinance. The city has no power or authority to absolutely prohibit the use of such products in the city, but possesses the power merely to regulate and control the use, sale, and disposition, etc., thereof. It is for these reasons that the ordinance is unreasonable and void.

[5] If the ordinance on its face showed what the expert evidence shows, then there would be reason and occasion to apply the rules of construction insisted upon by the city; that is, to supply the words necessary to make the ordinance reasonable and enforceable; but we cannot resort to extraneous evidence to inform us what words are omitted, or what words should be inserted, and where. The ordinance itself must afford this information. Where scientific or technical words or terms are used in an ordinance or statute, extraneous evidence is proper to show the meaning thereof, but not to instruct the court as to what particular word or phrase the lawmakers should have used, to make the law reasonable. The Supreme Court of the United States, speaking through Mr. Justice Lamar, well states the rules of construction in such cases. He says:

"The object of construction, applied to a constitution, is to give effect to the intent of its framers. * * * This intent is to be found in the instrument itself; and, when the text of a * * * provision is not ambiguous, the courts, in giving construction thereto, are not at liberty to search for its meaning beyond the instrument. To get at the thought or meaning expressed in a statute, a contract, or a constitution, the first resort, in all cases, is to the natural signification of the words in the order of grammatical arrangement in which the framers of the instrument have placed them. If the words convey a definite meaning which involves no absurdity nor any contradiction of other parts of the instrument, then that meaning, apparent on the face of the instrument, must be accepted, and neither the courts nor the Legislature have the right to add to it or take from it. Bronson, J., commenting upon the danger of departing from the import and meaning of the language used to express the intent, and hunting after probable meanings not clearly embraced in that language, says: 'In this way * * * the Constitution is made to mean one thing by one man and something else by another, until in the end it is in danger of being rendered a mere dead letter, and that, too, where the language is so plain and explicit that it is impossible to make it mean more than one thing, unless we lose sight of the instrument itself and roam at large in the boundless field of speculation.' Words are the common signs that mankind make use of to declare their intention to one another; and, when the words of a man express his meaning plainly, distinctly, and perfectly, we have no occasion to have recourse to any other means of interpretation." Lake County v. Rollins, 130 U. S. 662, 670, 671, 9 Sup. Ct. 651, 652 (32 L. Ed. 1060).

The expert witnesses show that the trouble is not in ascertaining the meaning of the ordinance as it is written; but in supplying or omitting words or phrases so as to make it say and mean what it ought to mean in order to be reasonable and enforceable. As it is written it is unreasonable and unenforceable, unless the use of all the products mentioned in the quoted provision is excluded.

As it reads, it is an ordinance of prohibition, and not one of regulation or inspection. The first witness, among other things, testified as to the meaning of the quoted part of the ordinance as follows:

"As that reads there, 'shall have a specific gravity of fifty-eight degrees Fahrenheit, of not less than fifty-eight nor more than eighty-four,' it would mean that it would have to be from 58 to 84 times as heavy as water. That is what it would mean as it reads there; yes. As it is, it could not possibly be complied with. There is no benzine, gasoline, or naphtha that can possibly weigh 58 times as much as water."

Another witness testified that:

"The only way it would be practical to enforce that ordinance as a commercial regulation is to assume he means degrees Baume. If the language is taken as it stands, my opinion is that it would not be practical to enforce it as a commercial regulation; you have to assume he means Baume. You spell that word B-a-u-m-e. To the man who did not know anything about the Baume system of grading and testing and inspecting who reads the ordinance it would be an impractical ordinance."

Another witness testified:

"I could not say that the ordinance as written is absurd; it is not intelligible, not accurately written. It is not accurately written. I make the assumption that the man who wrote the ordinance, whoever was responsible for it, meant to say something he did not say, and what he actually says in the ordinance is not accurate; you have to infer that he meant to say Baume. You have got to infer: First, that he knew what he was talking about; and, second, that he inadvertently said something he did not intend to say. It is inaccurate. It is unintelligible as it is written."

It is true that several of the witnesses testified that the ordinance, as written, is not certain; is not clear; that it was inaccurately written, etc.; but, when the whole evidence is analyzed, all this means nothing more than the ordinance as written is unreasonable, and that words or decimal points must be supplied to make it reasonable and enforceable. The witnesses all show, however, that it would never occur to an ordinary man, not versed in this particular learning, to supply the words or points which would make the ordinance reasonable and enforceable. One witness thus puts the case made, as to how the ordinance would be written if reasonable and enforceable:

"They would put 'B' in to be specified; to tell what is meant. Instead of saying 58 specific gravity of 58 Baume, it would have been all right to have said 'shall have a specific gravity of not less than 58,' and had put a decimal before it, 'nor more than 84,' and put a decimal before that; that would be all right—might not be the correct specific gravity. You could read it in there if you are assuming to read things in not expressed; you have as much right to read something else in it as to read 'Baume.' If you have got to read things in there, you do not know exactly what is meant. To say 'specific gravity' at 60 degrees Fahrenheit of not less than 54 nor more than 84, or whatever it is, '58 or more than 84' is not correct; it is not accurate."

The witness here stated the law, as well as the facts, when he said:

"You could read it in there if you are assuming to read things in not expressed; you have as much right to read something else in it as to read 'Baume.' If you have got to read things in there, you do not know exactly what is meant."

We do not feel at liberty to read into this ordinance the word "Baume," or the decimal points as indicated; and, unless one or the other is read into it, it is conceded that the quoted part is void.

It results that the trial court erred in its ruling holding this quoted part of the ordinance to be valid; and the judgment must be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.