MURDOCK, Justice
(dissenting).
I find Justice Shaw’s well written dissent highly instructive, and I agree with many aspects of it, both Parts I and II. I am more inclined, however, than is he to consider the term “children of the marriage” to be ambiguous and to use much of the authority and reasoning he employs in the service of construing that language.
That said, in the calculus I would employ, it would not be necessary to decide if those principles and authorities from Justice Shaw’s writing, alone, are enough to justify the interpretation of § 30-3-1, Ala. Code 1975, to which both of us would adhere. At worst, the question is a close one, and, in the end, the acquiescence doctrine ought be the deciding factor. My employment of the acquiescence doctrine would not be the employment of an “unconstitutional” means of modifying the statute in the years since Ex parte Bayliss, 550 So.2d 986 (Ala.1989), was decided — as the doctrine is cast, and then rejected, in Part V of the main opinion — but as a tool to take measure of the Bayliss holding regarding the legislative intent in enacting the statute. As Justice Shaw notes, in the intervening almost quarter century since Bayliss was decided, “ ‘[t]he Alabama legislature has not seen fit to replace or clarify that statute despite the thousands of child support cases decided each year in this state.’ ” 145 So.3d at 84 n. 17 (quoting 1 Judith S. Crittenden & Charles P. Kindregan, Jr., Alabama Family Law § 24:3 (2008)).[13] The main opinion, however, rejects the applicability of the acquiescence doctrine in this case.
Although the doctrine of legislative acquiescence is not always the most compelling of statutory-construction tenets available to us in a given case, we invariably have recognized this fact and have been cautious in applying that doctrine, rarely if ever turning to it as a primary tool and, instead, almost always using it as a tool of last resort. In this role, it has on occasion been a valuable tool. Recasting it in the *82 light in which it is cast by the main opinion is, in my opinion, at odds with an established use of this doctrine in our jurisprudence as a tool to measure the accuracy of some prior decision regarding legislative intent and will have unknowable consequences in future cases.
As significant as I believe are our decisions today regarding the Bayliss doctrine and the acquiescence doctrine, there are other aspects and/or consequences of today’s decision that I find problematic, some on an even more fundamental level than the foregoing. These other aspects and consequences of today’s decision include the following:
(1) Ex parte Brewington, 445 So.2d 294 (Ala.1983), is a case that for 30 years has stood for the proposition that a court may require divorcing parents to continue to provide support for a disabled child of their marriage, even after the child has reached the age of majority. Both Brew-ington and this case turn on the meaning of the same phrase — “children of the marriage” — in the same statute— § 30-3-1. Consistent with the concerns expressed by Justice Shaw, I see no principled way of defining that phrase differently in cases involving postminority educational support and cases involving disabled children. See 145 So.3d at 86 n. 21 and accompanying text (Shaw, J., dissenting).
(2) The main opinion states that “[t]he ‘plain and ordinary meaning' of statutory language may often be found in a dictionary.” 145 So.3d at 64 (emphasis added). I certainly agree with this statement. Similarly, I agree with the suggestion that a dictionary definition can be used “to shed light on the meaning” of a term used in a statute. Id. (citing Smith v. Smith, 433 Mich. 606, 612, 447 N.W.2d 715, 716 (1989)). I see no need, however, to embrace the seemingly absolute statement quoted by the main opinion from one treatise, i.e., that “ ‘[w]hen the legislature has chosen not to define a word, the “plain and ordinary meaning” can be ascertained from a dictionary.’ ” 145 So.3d at 64 (quoting 3A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutes and Statutory Construction § 69:9 (7th ed. 2007)).
(3)The main opinion states that, “[a]s further confirmation that the phrase ‘children of the marriage’ refers to minors, we may look to the definition of ‘child’ under the common law as applied in divorce proceedings.” 145 So.3d at 65. Again, I agree with the stated principle of statutory construction (although of course not with the ultimate conclusion drawn from it). Again, however, the main opinion appears to go further. It appears to suggest a more unequivocal rule of primacy in statutory construction that looks to the common-law meanings of words. It cites with approval the following statement from Standard Oil Co. v. City of Birmingham, 202 Ala. 97, 98, 79 So. 489, 490 (1918): “[C]ommon-law words [are to be construed] according to their common-law meaning.” Among other things, the main opinion also quotes with approval the following principle: “ ‘[Wjords undefined in a statute are to be interpreted and applied according to their common-law meanings.’ ” 145 So.3d at 65 (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 320 (2012) (emphasis added)).[14]
I do not know exactly what the term “common-law words” means; however, respectfully, I cannot reconcile the foregoing *83 and similar statements with the fact that in the almost 240-year history of this country, and the almost 200-year history of this State, many words that have come to be used from time to time by our Congress and by our legislature have taken on some different meaning than the meaning they held in the common law. Moreover, I am concerned that the main opinion’s emphasis on resort to the common-law meaning of terms is in conflict with, and essentially “overwrites,” the myriad of tenets of statutory construction that have come to be employed by this Court (not unlike every other court in this nation). Resort to the common law has sometimes been helpful, especially when other more commonly employed tenets of statutory construction fail to offer a ready or persuasive answer, but it has never in my understanding been the first or exclusive rule of statutory construction.[15] I do not think the emphasis upon it stated in the main opinion is well considered or advised; I do think it could have fundamental ramifications for the construction of statutes in the future.
(4) The penultimate paragraph in Part V of the main opinion ends with this statement: “The mere passage of time, therefore, has not diminished the power of this Court to reconsider Bayliss.” 145 So.3d at 71. I agree with this statement, and nothing said above regarding the value of retaining the acquiescence doctrine as a tool to be used on rare occasions when it is appropriate to do so should be understood as saying otherwise.
I do, however, have a grave concern over the discussion beginning with the second paragraph of Part V (and parts of Part III) that precedes this statement and that indicates that adherence to the interpretation of § 30-3-1 in Bayliss would require acceptance of changes or additions made to the statute by the judicial branch in a manner that violates the separation-of-powers provisions of the Alabama Constitution that are cited in Part V. 145 So.3d at 75.
Whether one considers Bayliss to have been rightly decided or wrongly decided, it was an examination of the meaning of statutory language and an exercise of the judicial function. From this case forward, I fear any decision by a court interpreting an enactment of our legislature that is overruled years later by a subsequent court will now be vulnerable to criticism as a decision by which the original court violated the separation-of-powers doctrine embodied in the Alabama Constitution. Moreover, because a violation of the separation-of-powers doctrine implicates the subject-matter jurisdiction of our courts, that which heretofore has been considered mere judicial error, to be corrected by some subsequent overruling, now is susceptible not only to being viewed as a constitutional violation, but also to being reviewed as part of a void judgment. My concerns therefore extend to the impact of today’s decision on the principle of finality of judgments.

. Bayliss confronted and overcame the stare decisis effect of those pre-Bayliss decisions stating the general rule that the duty of support was applicable to only minor children. In almost every one of the 24 years since that time, there probably have been hundreds of decisions applying the specific holding of Bay-liss in this regard. In addition to an unknowable number of trial court decisions that undoubtedly now total in the thousands, the cases decided since Bayliss include dozens of decisions by this Court and hundreds of decisions decided by the Court of Civil Appeal applying or reiterating the holding in Bayliss.

. See also 145 So.3d at 65, citing Arnold v. State, 353 So.2d 524, 526 (Ala. 1977), for the proposition that "statutes are presumed not to alter the common law in any way not expressly declared.”

. Section 1-3-1, Ala.Code 1975, is not at odds with our use of the plain-meaning doctrine (employed in light of contemporary word usage) and so many other longstanding and well established rules of construction other than resort to the English common law:
"The common law of England, so far as it is not inconsistent with the Constitution, laws and institutions of this state, shall, together with such institutions and laws, be the rule of decisions, and shall continue in force, except as from time to time it may be altered or repealed by the Legislature.”