146 So. 811

## EMMETT v. ALABAMA GREAT SOUTHERN R. CO.

### 7 Div. 166.

Supreme Court of Alabama.

March 16, 1933.

Haralson & Son, of Fort Payne, for appellant.

Goodhue & Lusk, of Gadsden, for appellee.

THOMAS, Justice.

This suit was by the plaintiff as the administrator of the estate of Lorenzo Whitfield Earp, deceased, against the Alabama Great Southern Railroad Company, for the wrongful killing of plaintiff's intestate by the defendant.

The original complaint contained three counts: Count 1 charging that "The defendant by its servants, agents or employees, who were then and there acting within the line and scope of their employment, *negligently* ran an engine which was drawing a passenger train over, on, or against, the body of plaintiff's intestate and thereby caused his death"; count 2, that "plaintiff's intestate was on or dangerously near the track of defendant's said railroad, a few hundred yards north of where the north boundary line of the City of Fort Payne, as then located, crossed the railroad track of said defendant, and said intestate was then and there in a dangerous and perilous position in that he would be injured by an approaching train if it proceeded towards him, and the defendant's agents, servants or employees in charge of an engine on one of defendant's passenger trains going north knew of said dangerous position of plaintiff's said intestate and knowing thereof the said agents, servants or employees of the defendant in charge of said engine, *negligently failed to use all the means at their command* to stop the train and prevent the injury"; and count 3 charging that "the agents, servants or employees of the defendant, who were operating a train of the defendant at said time on said railroad, while then and there acting within the line and scope of their employment, *wantonly, wilfully* or *intentionally* ran the engine of said train over, upon or against the body of plaintiff's intestate and killed him," etc. (Italics supplied.)

By amendment of the complaint, counts 4 and 5 were added, count 5 charging, among other necessary averments, that "the plaintiff's intestate was on or near the track of defendant's said railroad a few hundred yards north of where the north boundary line of the City of Fort Payne, as then located, crossed the railroad track of said defendant, and at a place and time where the said railroad track of the defendant was so frequent-

ly used by the public as a passway by pedestrians that someone was likely to be in a position of danger there, facts and circumstances known to those in charge of the approaching train of defendant, and that the defendant's agents, servants, or employees in charge of an engine pulling one of defendant's passenger trains going north at the time complained of, knowing of the said use at said time and place of said track as a passway for pedestrians, negligently failed to keep a lookout for persons situated as was this intestate at the time, and negligently ran said engine and train at a high rate and dangerous rate of speed, without giving an alarm of approaching danger, such as blowing the whistle or ringing the bell, on, over or against the body of plaintiff's intestate."

The plea was the general issue in short by consent, with leave to give in evidence any material facts that may be properly pleaded.

The two questions presented are, the giving of the affirmative charge at the request of defendant and the overruling of the motion of plaintiff for a new trial.

The defendant offered no testimony.

The rules as to the giving of affirmative instructions are well understood. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135; Brown Funeral Homes & Ins. Co. v. Baughn (Ala. Sup.) 148 So. 154;[1] Central of Georgia Rwy. Co. v. Bates (Ala. Sup.) 144 So. 9;[2] Central of Georgia Rwy. Co. v. Corbitt, 218 Ala. 410, 118 So. 755; Central of Georgia Rwy. Co. v. Ellison, 199 Ala. 571, 75 So. 159; Alabama Great Southern Railroad Co. v. McWhorter, 156 Ala. 269, 47 So. 84.

■■■ The appellee's line ran through Fort Payne; the accident occurred about 300 yards north of the corporate line, and about 300 yards south of the public crossing known as that of Minnvale. There were double tracks, and the engine and train of cars were proceeding northward on one of these lines (which track is not stated) between 6:30 and 7 o'clock p. m., when the injury occurred. No witness saw decedent at the time of or immediately preceding his injury; no one testified as to the manner and circumstances of his injury, except as to the injured place about his head and shoulder. There was no evidence that the engineer or fireman saw decedent on or near the tracks in time to have avoided injuring him, or in time to have warned him, except the inference which may be drawn from the testimony of witness Owens to the effect that the "engine was blown" and brakes applied "about forty yards from where the train commenced whistling to where the body" was found; that "it whistled about three times. It did not stop before it struck him; the train ran on by the body

---

[1] Post, p. 661.
[2] 225 Ala. 519.

and then stopped." The witness Owens further testified on this point: "I heard the noise from the train * * * the brakes or wheels must have been locked on the train because the *fire was flying out of them just before* it passed where the body was." (Italics supplied.)

There was no testimony as to whether there were headlights or as to the speed of the engine; there was no evidence of the position and duties of the engineer or fireman immediately before the point of discovery or contact in question. Snyder v. Mobile Light & Ry. Co., 214 Ala. 310, 107 So. 451. Thus the case was not brought within the rule of our cases. Central of Georgia Ry. Co. v. Bates, 225 Ala. 519, 144 So. 9.

The rule as to negligence after the discovery of peril is that liability is predicated upon actual knowledge of peril and failure to take due and available preventive action. Central of Georgia Rwy. Co. v. Bates (Ala. Sup.) 144 So. 9, 10,[3] and many authorities there cited. No evidence indicated failure of duty on the part of the employees in charge of the engine and cars from the time the whistle was blown and the brakes were applied, about forty yards from the point of the injury. Central of Georgia Rwy. Co. v. Ellison, 199 Ala. 571, 75 So. 159; Thornton v. Southern Railway Co., 199 Ala. 532, 75 So. 4.

 Under count 5 there was evidence that people walked along and across the tracks at that point, night and day, as a passway; but on this phase there was no evidence that the fact of its use and the frequency of travel by pedestrians was known to the defendant's employees in charge of the engine on that occasion. The fact of such use is not alone sufficient; actual knowledge on the part of the servants in charge must exist. Southern Railway Co. v. Stewart, 164 Ala. 171, 51 So. 324; Illinois Cent. R. Co. v. Martin, 213 Ala. 617, 105 So. 805; Central of Georgia Rwy. Co. v. Bates, supra; Central of Georgia Rwy. Co. v. Corbitt, 218 Ala. 410, 411, 118 So. 755; Central of Georgia Rwy. Co. v. Ellison, 199 Ala. 571, 75 So. 159.

The burden in respects here indicated was upon the plaintiff. Snyder v. Mobile Light & Ry. Co., 214 Ala. 310, 107 So. 451; Central of Georgia Rwy. Co. v. Bates, supra; Robertson v. Southern Ry. Co., 224 Ala. 640, 141 So. 559; Elliott v. Northern Alabama Ry. Co., 222 Ala. 79, 130 So. 775; Empire Coal Co. v. Martin, 190 Ala. 169, 67 So. 435; Louisville & Nashville Railroad Company v. Moran, 190 Ala. 108, 66 So. 799.

We are therefore of the opinion that there was no error in giving the affirmative instruction requested.

 The rules of granting or refusing a new trial on the ground of newly discovered evi-

dence are collected and stated in Fries v. Acme White Lead & Color Works, 201 Ala. 613, 79 So. 45; Van Tinder v. Birmingham Ry., Light & Power Co., 202 Ala. 474, 80 So. 858; Malone Coal, Grain & Motor Co. v. Hale, 207 Ala. 335, 92 So. 553; McLeod v. Shelly Manufacturing & Improvement Co., 108 Ala. 81, 19 So. 326; Schlaff v. Louisville & Nashville R. R. Co., 100 Ala. 377, 14 So. 105. The form of presentation of the motion was according to the rule. Fries v. Acme White Lead & Color Works, supra. What, then, of the substance of the motion supported by the affidavits? Would it render a "different result probable on retrial?"

The witness, Mrs. Poe, locates the intestate on the railroad track about 5 o'clock, proceeding in the direction of his injury and about one-half mile therefrom, and says that intestate "complained of having a headache and got some water" from her hydrant.

Affiant Lester Peek testified "that on the afternoon that Whitfield Earp was killed, he saw a man sitting on the east side of the railroad tracks at the place where he later saw Earp's body immediately after the A. G. S. passenger train number 18 passed; that there are double tracks at that place on the railroad, and that the man he saw was sitting on the east side of the right hand track going north; that when he saw the man sitting on the track it was somewhere near 6 o'clock in the evening; that the train passed the place a little after six o'clock on that evening; that immediately after the train passed he went with others over to the tracks and found the body of Whitfield Earp, dead, with the head and shoulders injured; that there was some blood on the end of a crosstie near where he was sitting; that in his opinion he saw Earp sitting on the track not over fifteen minutes before the train came by; Earp was sitting on the end of a crosstie."

The affiant O'Shields said: "* * * That on the afternoon before Whitfield Earp was killed he saw the said Whitfield Earp and talked with him for about forty minutes, from about five-twenty o'clock in the afternoon until about six o'clock; that Earp was then on the A. G. S. Railroad tracks about a quarter of a mile above the Hosiery Mill and about a quarter of a mile above the city limits as they were at that time; that when he left Earp he [Earp] walked away north on the railroad tracks; that later when the train stopped at or near the place of the alleged accident he saw the train."

The evidence of W. J. Haralson and H. P. Emmett was to the effect that plaintiff was free from negligence in not discovering the facts deposed by Poe, Peek, and O'Shields before the trial; that they (Haralson and Emmett) had made diligent inquiry before the trial, and knew nothing about the facts set up in their several affidavits, until after the

---

[3] 225 Ala. 519.

trial of the case at the last session of the circuit court.

This evidence accounts for the indisposition of the deceased and for his being upon that railway or passway for the time after he left the home of Mrs. Poe until the time of his accident, and for the fact that his position on the east side of the right-hand track going north, where he received his injuries at or after 6 o'clock by the engine in question, was that of a man sitting on the end of a cross-tie and was visible without the aid of the headlight on the engine. It adds nothing to that phase of the case dealing with appellee's agents' discovery of the peril, their failure of duty thereafter, or of their knowledge of the passway and dangerous proximity of a human being thereto and thereon at the time of the accident.

We are persuaded that a new trial was properly refused. The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.

