157 So. 854

## SOUTHERN RY. CO. v. MONTGOMERY.
### 6 Div. 338.

Supreme Court of Alabama.
Oct. 4, 1934.

Rehearing Granted Dec. 6, 1934.

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellant.

458

W. A. Denson, of Birmingham, for appellee.

THOMAS, Justice.

The cause was submitted on motion to strike the bill of exceptions, and on the merits.

The motion to strike the bill of exceptions has been examined and found to be without merit.

The judgment was rendered October 12, 1932; bill of exceptions presented to the trial judge May 9, 1933, signed and allowed of record June 19, 1933; motion for a new trial of date of November 4, 1932, was successively and duly continued to later dates. It is then recited by the record, "On this the 4th day of February, 1933, came the parties by their attorneys, and upon their motion, It is ordered and adjudged by the court that this motion be and the same is hereby continued to February 11, 1933," and, "On this the 11th day of February, 1933, came the parties by their attorneys, and plaintiff objects to hearing of motion on ground that court has no jurisdiction on account of time in which court could hear motion expired at midnight, February 10, 1933; the objection of plaintiff is by the court heard and considered," and "It is ordered and adjudged by the court that this motion be and the same is hereby overruled, and plaintiff excepts to court entering any order on motion, and defendant excepts to court overruling motion."

It is insisted by appellee that under the rule of Oberhaus v. State ex rel. McNamara, 173 Ala. 483, 497, 55 So. 898, 902, the life of the motion ceased to exist "at midnight of February 10, 1933, and was exclusive of February 11, 1933." The question there for decision was the meaning of the Act of August 31, 1909 (p. 305), and it was held that under the act the term of Oberhaus "as jury commissioner," under the appointment made by Governor B. B. Comer, ran "till the first Monday after the second Tuesday in January, 1911." Mr. Justice Somerville adverted to the definition of the word "till," and observed that "The words 'to,' 'till,' and 'until' are synonymous, and are sometimes ambiguous

and equivocal in the particular connection in which they occur in provisions for a period of time for the performance of an act, and are therefore construed as exclusive or inclusive according as the subject-matter about which they are used may show the intention in using the words to have been the one or the other."

In McCord v. Lanier, Register, 207 Ala. 663, 93 So. 546, the meaning of a restraining order to desist from further efforts to collect certain costs "until the appeal in said cause shall have been heard and determined" held excluded "all subsequently accruing time after date of final decision."

The case of Johnson v. State, 141 Ala. 7, 37 So. 421, 109 Am. St. Rep. 17, held that under the statute that term of court continued *until* a certain Saturday, and the day named was excluded from the term by force of the general rule of exclusion; a matter of legislative intent for decision. Standard Oil Co. v. City of Birmingham, 202 Ala. 97, 98, 79 So. 489.

In Richardson v. State, 142 Ala. 12, 39 So. 12, the defendant was given "until January 5, 1905," in which to have the bill of exceptions signed; held "The words 'until January 5th' excluded that day, and consequently the time for signing the bill of exceptions expired on the night of January 4th." 16 A. L. R. 1097, note.

In Montgomery Traction Co. v. Knabe, 158 Ala. 458, 48 So. 501, the question was the term of the city court under the Act of February 28, 1907 (Loc. Priv. & Sp. Laws, p. 300); held the term of court terminated on Saturday night, July 6, 1907; and "until" did embrace Saturday, thus overruling the Johnson Case, supra.

If the motion for a new trial, continued to February 11, 1933, for hearing, may not be heard on that day, but the use of the word *to* excluded the day named, the time for presentation of appellant's bill of exceptions expired 90 days after October 11, 1932, and the bill so signed would be subject to the motion to strike. Sections 6433, 6434, Code; Stroup v. Alabama Power Co., 216 Ala. 290, 292, 113 So. 18.

The motion to strike the bill of exceptions is to clear up any seeming conflict, if such exist, and invoke a decision of the meaning of the words, "*to* February 11, 1933," in the last order of the court; whether it gave the right of hearing on the day named. We hold that as to hearing the motion for a new trial, it was the intention of the court to extend the time to the named date, and that it embraced the date of February 11, 1933, for the hearing. The motion for new trial was duly and properly heard on that date; and this motion to strike the bill of exceptions is overruled.

The action was instituted under the homicide statute (section 5696, Code), and resulted in a judgment for the plaintiff.

The question on the pleading was the overruling of appellant's demurrer to count 4, added by way of amendment, declaring for subsequent negligence, and that ruling is assigned as error. However, there is no insistence thereof in argument under the rule that obtains. Georgia Cotton Co. v. Lee, 196 Ala. 599, 72 So. 158.

Count 4, for subsequent negligence of the fireman and the engineer, was that on which trial was had and submission to the jury. The gravamen of that pleading is, that the negligence of Griffin, as the engineer, and Newman, as the fireman of the locomotive in question, and at the time and place, "after becoming aware of the peril of said locomotive colliding with plaintiff's intestate, and while acting within the line and scope of their employment, negligently failed to use all of the means at their command to avoid said locomotive colliding with said intestate, when by the use of said means said locomotive would have been prevented from colliding with said intestate, and intestate's death would have been avoided."

For convenience we will try to follow the order of counsel's discussion of the assignments of error in considering the questions duly presented.

Plaintiff's witness Garrett, having testified and cross-examined, was re-examined as follows: "Q. About that time of day I will ask you whether or not people are constantly traveling along there, in other words, just continuously going by there, going and coming, coming toward East Lake and going from East Lake?"

Defendants objected to the question on the ground that it calls for incompetent, irrelevant, immaterial, and illegal testimony, and on the further ground that there was no wanton count. The objection being overruled and exception reserved, the witness answered:

"A. I would answer that in this way: It almost makes it a nuisance to live there with so many automobiles going to and from.

"The witness testified further: There is so much traffic it is mighty near a nuisance to make it a home and live there. *I said I knew what an alarm signal was, and I never heard*

*any given on that occasion."* (Italics supplied.)

It is the general and cardinal rule that on the admission of evidence it must have a just and reasonable inference or presumption in relation to a material fact involved in the issue on which the jury are to pass, to prove or disprove a material fact in issue. Birmingham Baptist Hospital v. Blackwell, 221 Ala. 225, 128 So. 389; Karr v. State, 106 Ala. 1, 17 So. 328. Under the fourth count, defendant's declaration for negligence after discovery of peril is predicated on actual knowledge of the peril and the failure to take due and available preventive action to avoid injury to plaintiff's intestate. Emmett v. Alabama Great Southern R. Co., 226 Ala. 310, 146 So. 811; Central of Georgia Ry. Co. v. Bates, 225 Ala. 519, 521, 144 So. 9.

The record fails to disclose that there was a motion to exclude the evidence of the witness Garrett which was the subject of objection by defendant and overruled by the court. It has not been held that under the General Acts of 1927, p. 636, there was no necessity for informing the court of what was expected to be shown by the witness when objection was sustained; or when overruled, that reversible error be the result. Notwithstanding the statute, this court said: "It is commonly ruled by the courts that questions of error in the trial of causes are of judicial, not legislative, cognizance. But, conceding for the argument the competency of the act here in question, we note the fact that it undertakes to define error in the admission of evidence, but does not require the court to reverse judgments for error without injury or to presume facts in order to reach a conclusion of injury. We hold, therefore, that the authority of the cases cited last above still governs this court in the determination of questions raised in this fashion." Flowers v. Graves, 220 Ala. 445, 446, 125 So. 659, 660.

And in Morgan Hill Paving Co. v. Pratt City Sav. Bank, 220 Ala. 683, 685, 127 So. 500, 502, is the observation: "Without undertaking to define the scope and effect of such statute, we follow the above decision, and hold that it does not repeal the long-settled law of this state, essential to the administration of justice, that error will not be presumed; nor does it repeal the rules of practice, not mentioned therein, to the effect that probable injury must appear."

And in Berry v. Dannelly, 226 Ala. 151, 145 So. 663, 666, the observation is made, that the rule requiring the appellant "to show error and probable injury is not abrogated by the provisions of the Act of September 9, 1927, Acts 1927, page 636." Ramage, Parks & Co. v. Folmar, County Treasurer, et al., 219 Ala. 142, 121 So. 504. And objection after answer held too late in Ledlow v. State, 221 Ala. 511, 129 So. 282.

In King v. State, 24 Ala. App. 267, 134 So. 133, it was held that under the statute motion to exclude the answer was not necessary, after due objection that was overruled and exception taken.

The statute and decisions were recently considered in Alaga Coach Line v. McCarroll, 227 Ala. 686, 151 So. 834, 836, 92 A. L. R. 470, where it was held that the statute "does not repeal the long-settled law of this state, essential to the administration of justice, that error will not be presumed; nor does it repeal the rules of practice, not mentioned therein, to the effect that probable injury must appear"; and, further, that "the burden is on the appellant not only to show error, but also to show. that he has probably been prejudiced by such error." St. Louis-San Francisco R. Co. v. Kimbrell, 226 Ala. 114, 145 So. 433; United States Fidelity & Guaranty Co. v. Yeilding Bros. Co. Department Stores, 225 Ala. 307, 143 So. 176.

The evidence of witnesses shows the accident occurred near Grand avenue on the property of the railway company between the avenue and the depot platform. However, we do not see how this ruling of the trial court could have prejudiced the defendant, because the fireman testified that he was on the lookout for any one in dangerous proximity to the engine, saw the intestate from the fireman's place on the engine as it was on the crossing, and witness constantly saw intestate until he was stricken, and advised the engineer when the injury occurred. That is, the question of proximity to such much-traveled street, and the noise of cars known to the defendant's agents in charge, quickened such agents in charge of the engine to a constant lookout at such time and place; and that the fireman was so on the lookout is shown by his positive testimony to the effect that he was so advised, not only of a probability of danger at such time and place, but that they had actual knowledge of the position and movement of plaintiff's intestate and knew that he was in dangerous proximity to the advancing engine.

The engineer testified that on his side he was on the lookout; that "it was such a crossing that required our observation at that place. * * * I think this special time I was looking out."

The fireman testified that he was at his post on the side of the engine at all times, and had actual observation and knowledge of intestate and his dangerous proximity to and including the moment of his injury; that he observed intestate from the time he left Grand avenue, and did not see him give any indication that he knew of the approach of the train: that "he was walking at a pretty nice gait"; that "the line drawn indicates the way the man went when I saw him until he was struck. *I was watching this crossing here as that is a dangerous crossing and lots of times people come down there running pretty fast, and then after my engine had crossed and completely covered that crossing, I saw him walking right from that position that is marked there.* I had never seen him before that. That is the first place I saw him there. I had good eyes. We were coming down the track there *at the rate of about ten or twelve miles an hour on this crossing.* * * * The pilot beam went by this man. He walked into the cylinder head, turned into it. *He took three or four steps going into the train."* (Italics supplied.).

Moreover, the witness Garrett testified that he did not hear the signals given as testified by the enginemen, and the evidence was competent, as it affected or impaired his ability to hear signals, if given.

What we have said applies to the third assignment of error. We may further observe that the question to Johnson, of the same general tenor, did not refer to Grand avenue. The idea of Grand avenue was injected into the inquiry by the objection of defendant's counsel. We have indicated that the place where intestate was killed was at the intersection of several streets or ways at the depot of defendant (not Grand avenue alone), and the tracks of the defendant are laid out at, over, or in the intersection of such ways and immediately beside the place where intestate was injured; the place of ingress and egress of its tracks by the public and this intestate. Such facts are shown by the testimony of the witnesses; also by photographs introduced in evidence, and maps. The time inquired about of the witnesses Garrett and Johnson was the hour of the day when the injury occurred; this is shown by the question, and its context shows such identity. The answer of the witness Johnson was to the effect that witness "couldn't say about it."

We find no error to reverse under the second and third assignments of error.

Assignment of error 14 sought a review of the giving of charge 38 for plaintiff. This charge was not subject to the criticism that it required premature *action* by the fireman as soon as he discovered the peril of intestate in the zone of danger. It was the duty of such agent in charge, after he discovered the peril arising out of the *immediate facts,* as and when the occasion demanded, to use all the means at hand promptly, known to prudent and skillful engineers, to avoid accident. The charge did not demand a more efficient act or discharge of duty on the part of the fireman. Such are our decisions. Johnson v. Louisville & N. R. Co., 227 Ala. 103, 148 So. 822; Louisville & Nashville Railroad Company v. Young, 153 Ala. 233, 236, 45 So. 238, 16 L. R. A. (N. S.) 301; Southern R. Co. v. Alsobrook, 223 Ala. 540, 137 So. 437; Thompson & Donohoo v. Mobile & O. R. Co., 211 Ala. 646, 101 So. 441. The charge does not assume, as matter of fact, that deceased was in a position of peril, hypothesizing as it does, if you are *reasonably satisfied* from the evidence the fireman *discovered intestate in a state of peril.* The pertinent questions of fact were for the jury and so left by the charge. However, there appears from the evidence to be no dispute of the fact that intestate was in peril, and that fact was within the observation and knowledge of the fireman. Alabama Power Co. v. Hines, 207 Ala. 346, 92 So. 611. The disputed questions of fact of when and where intestate became imperiled, and when and where the fireman became so aware, were for and left to the decision of the jury. Kelly v. Hanwick, 228 Ala. 336, 153 So. 269. There was no error in giving charge 38 for plaintiff. The charge does not assert or assume that the fireman discovered deceased's peril in time to take preventive measures; and limits the required action to such as was available to a *skillful fireman in his position.*

The oral charge and several given charges stated these questions for the jury's determination. Pages 19 and 20 of the record.

Charge 35, declaring the degree of care required as to subsequent negligence—limiting recovery attributable to the *failure of the fireman to do what a reasonably prudent man* would have done—was contrary to the pronouncements made in the decisions. The duty in the premises was to do all in his power, to use all appliances at hand promptly, known *to prudent and skillful engineers,* to prevent injury. Johnson v. Louisville & N. Railroad Co., 227 Ala. 103, 112, 148 So. 822; Wetzel v. Birmingham Southern R. Co., 204 Ala. 619, 621, 87 So. 96; Brown & Flowers v. Central of Georgia R. Co., 197 Ala. 71, 72 So. 366; Louisville & Nashville Railroad Co. v. Abernathy, 192 Ala. 629, 639, 69 So. 57. There

was no error in the refusal of this charge requested by defendant, under the evidence.

■ The last assignment presented by defendant's counsel (assignment of error 40) was the action of the trial court in overruling the appellant's motion for a new trial, which, in addition to the errors heretofore considered, invoked a decision as to (1) the preponderance of the evidence, and (2) the excessiveness of the verdict.

The testimony of the fireman, Newman, Alline Wilson, Johnson, and Luquire showed that deceased approached the track with his back to the engine; that he did not turn his head in that direction, nor did he give any indication that he was aware of the approach of the train and his danger, proceeding as he was. The fireman saw him in time as the engine was leaving Grand avenue for the west and behind decedent; as he walked at an angle or degree toward the track on which the train proceeded; that he was coming at an angle toward the track with his back turned to the engine. The evidence shows the approach of a freight train on the other track; that there was its noise, and no fact is shown to indicate to the fireman observing him that deceased was aware of the approach of the train from behind. The freight train was on a parallel track "making an awful noise."

This case falls within the influence of Illinois Cent. R. Co. v. Martin, 213 Ala. 617, 619, 105 So. 805, 807, saying: "Seeing him in a place of rapidly approaching danger requires that a watch be kept on his movements. If he has his back to the train, seemingly unconscious of its approach, the first duty is to give warning. If other noises drown the noise of the train, this duty is the more apparent. The statutory ringing of the bell while passing through a town or village may not be sufficient in such case." Snider v. Alabama Great Southern R. Co., 210 Ala. 119, 122, 97 So. 209.

We are of opinion that the verdict was supported by the weight of the evidence.

The other ground of the motion for a new trial insisted upon is the excessiveness of the verdict. The conscious and negligent conduct of the fireman after actual knowledge overwhelmingly supports the evidence; aside from the testimony of other witnesses, as we have indicated, the photographs, diagrams, and maps.

■ The amount of damages in such a case is first submitted to the sound discretion of the jury hearing all the evidence, then to the trial judge on the motion for a new trial and upon the evidence adduced upon the trial. Upon the appeal the decision of the jury and the trial court will not be set aside, unless the preponderance of the evidence is so decided as to clearly convince the court that it is wrong and unjust, and so excessive as to indicate passion, prejudice, partiality, or corruption on the part of the jury (see Hale v. San Bernardino Valley Traction Co., 156 Cal. 713, 106 P. 83, for general authorities; Nashville, Chattanooga & St. Louis Railway v. Crosby, 194 Ala. 338, 349, 70 So. 7; J. C. Byram & Co. v. Livingston, 225 Ala. 446, 143 So. 461; Central of Georgia Railway Co. v. White, 175 Ala. 60, 56 So. 574; Yarbrough v. Mallory, 225 Ala. 579, 144 So. 447); or unless some other improper or controlling sentiment affected the jury, the rule in this jurisdiction is not to reverse. Louisville & N. R. Co. v. Robinson, 213 Ala. 522, 105 So. 874; Whitman's Fifth Ave. Garage Co. v. Ricks, 211 Ala. 527, 101 So. 53.

Yarbrough v. Mallory, 225 Ala. 579, 144 So. 447, where the authorities are collected and reviewed, held:

"In granting new trial for excessive or inadequate damages, court need not determine what wrongful influence resulted in gross miscarriage of justice.

"It is duty of trial court to grant new trial for excessive or inadequate damages, where, after making all due allowances, verdict is clearly unjust."

We cannot say, under the rule, there was error in refusing the motion for a new trial.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.

On Rehearing.

THOMAS, Justice.

■ The court, after full consideration of the evidence, is of the opinion that the verdict is excessive, in view of the degree of culpability chargeable to the defendant on aspects most favorable to plaintiff, and considers that the sum of $10,000 is adequate for punitive damages recoverable. Parke v. Dennard, 218 Ala. 209, 215, 118 So. 396. Therefore, under the authority of section 6150, Code 1923, the verdict is hereby reduced to the sum of $10,000, and, if plaintiff remits all amounts in excess of said sum by filing a remittitur with the clerk of this court within thirty days, the judgment of the circuit court will be affirmed; otherwise the judg-

ment will be reversed and the cause remanded.

Rehearing granted; affirmed conditionally.

ANDERSON, C. J., and GARDNER, BOULDIN, FOSTER, and KNIGHT, JJ., concur.

BROWN, Justice (dissenting).

The overruling of defendant's timely objection to the question put to the witness Garrett by plaintiff's counsel, eliciting testimony as to the volume and frequency of travel on Grand avenue and the "public driveway" leading into Wood street, intersected by the railroad tracks east of the point where intestate was killed, is the basis of the second assignment of error, and a ·ground of the motion for a new trial.

Count 4 avers that intestate "was struck * * * between Grand Avenue and said defendant's Woodlawn station," and plaintiff's witness, Alline Wilson, testified that the "next crossing," which could only refer to the said "public driveway," and which was west of the· intersection of Grand avenue, "was a short block" about "a half block" from the place of contact. The evidence is without dispute that the catastrophe did not happen at the intersection of either of said streets and the railroad tracks, but the contact between the locomotive and said intestate occurred near the Woodlawn depot platform, a considerable distance west of both "the public driveway" and Grand avenue. This evidence called for by the question was immaterial and irrelevant to the issue presented by the pleadings.

By the averments of count 4 of the complaint, the plaintiff assumed the burden of adducing evidence going to show, not that some one was in an exposed position at the intersection of said public ways, but that her intestate was on the track of the railroad, or so near thereto as to be in peril of being injured, or that his position and movements were such as to indicate that he would be so in peril by the time the locomotive reached him, and that this peril was discovered by the engineer and fireman in time for them to have used some or all the means at their command to avert the injury. Central of Georgia R. Co. v. Lee, 225 Ala. 283, 142 So. 660·; Emmett v. Alabama Great Southern R. Co., 226 Ala. 310, 146 So. 811; Southern Railway Co. ·v. Drake, 166 Ala. 540, 51 So.̇ 996.

It is well settled that, if a question to a witness is obnoxious to the objection interposed to it, and the answer is responsive to the question, motion to exclude is not.necessary to reserve the question for review on appeal, either under our decisions or the statute. Troy Lumber & Const. Co. v. Boswell, 186 Ala. ̇409, 65 So. 141; Gen. Acts 1927, p. 636, § 2.

However, it cannot be affirmed that the answer was responsive to the question, and in the absence of motion to exclude the court's action was not invoked as to the relevancy and competency of the answer. East̠ Tenn., Va. & Ga. Railroad Co. v. Bayliss, 74 Ala. 150.

Another predicate for an assignment of ̇error and ground of the motion for a new trial was the giving of charge 38 at the plaintiff's request, which instructed the jury: "I charge you if you are reasonably satisfied from the evidence the fireman discovered the peril of intestate it then became the duty of the fireman of the defendant, as soon as he discovered the peril of intestate, to use, promptly and in their proper order, all of the means known to skillful firemen in his position to avert an accident."

The gravamen of count 4 of the complaint is that "said Griffin and said Newman, after becoming aware of the peril of said locomotive colliding with plaintiff's intestate, and while acting within the line and scope of their employment, negligently failed to use all the means at their command to avoid said locomotive colliding with said intestate, when by the use of said means said locomotive would have been prevented from colliding with said intestate, and intestate's death would have been avoided." (Italics supplied.)

The evidence presents the case in two aspects: That on the part of the plaintiff, when considered in its light most favorable to her, going to show that said intestate, after he left the end of the sidewalk on Grand avenue, walked diagonally at about 45 degrees with the track of the railroad until he reached the end of the ties next to the south rail, and then proceeded along the track on which the train was approaching at a distance of something over a hundred feet, and, while walking in this position with his back to the train, he was observed in this situation by the fireman who did·nothing to warn the engineer or otherwise; that said intestate was struck in the back by the pilot beam of the locomotive and killed.

That on the part of the defendant tended to show that when the fireman first discovered plaintiff's intestate he was about midway of the space between the end of the sidewalk and the track, walking diagonally in a northwesterly direction toward the track, and was not in a place of danger, and did not

464

come within the sweep of the locomotive until the pilot beam passed him, when he suddenly turned north and walked up against the cylinders of the locomotive.

By the quoted averments of the complaint, and this is consistent with the law, the plaintiff assumed the burden of showing that the enginemen discovered the peril of plaintiff's intestate in time to take preventive steps to avert the injury and death, and charge 38 pretermits this element, assumes that, if the fireman discovered his peril, it was in time to do something to avert the catastrophe, and was invasive of the jury's province.

If, as the fireman's testimony tends to show, intestate, by his own conduct, put himself in a position of peril, and this action on his part was so sudden that there was no reasonable possibility of averting the disaster, the statute imposed no duty on the enginemen to act. Beavers v. Southern Ry. Co., 212 Ala. 600, 103 So. 887; Savannah & Western Railroad Co. v. Jarvis, 95 Ala. 149, 10 So. 323; Memphis & C. R. Co. v. Davis (Ala. Sup.) 14 So. 643; Kansas City, Memphis & Birmingham Railroad Co. v. Watson, 91 Ala. 483, 8 So. 793; East Tenn., Va. & Ga. Railroad Co. v. Bayliss, 77 Ala. 429, 54 Am. Rep. 69.

Charge 38 is subject to the further criticism that it undertook to impose on the fireman the use of all means "promptly and in their order *known to skillful firemen* in his position to avert the injury," regardless of whether such means were *within his power or at his command.* (Italics supplied.)

It must be assumed that "skillful firemen" know of all the means and appliances for warning persons on or in dangerous proximity to the track, of stopping or checking the speed of a locomotive, such as blowing the whistle, ringing the bell, applying the brakes, and even reversing the engine; nevertheless, if the engineer is at his post and actively in charge of the locomotive and all the appliances at hand to prevent the locomotive coming in contact with a person or obstruction on or dangerously near the track, the fireman could not, without the grossest negligence, assume to perform the functions and duties of the engineer, notwithstanding such means were known to him as fireman.

The engineer in the instant case was called by and testified as a witness for the plaintiff, and his testimony shows that he was in charge of the operation of the locomotive, and was, as he expressed it, on the "qui vive;" that he had turned on the automatic appliance for ringing the bell, that he had just blown the crossing whistle, and had just released the lever; that the brake levers were immediately in front of him; that he was looking ahead and did not see intestate and knew nothing of his presence until the fireman informed him that intestate had been killed, and that he then applied the brakes and stopped the train. The duty imposed by the statute is imposed on "the engineer or other person having control of the running of a locomotive." Code 1923, § 9952.

In the circumstances disclosed by the evidence, the duty resting on the fireman was to act promptly to use the means *within his power* and within the scope of the duties of his employment, if he discovered intestate in time to take such action, and that was to warn or notify the engineer of intestate's peril. Louisville & Nashville R. Co. v. Loyd, 186 Ala. 119, 65 So. 153.

The rehearing should be granted, the judgment of affirmance set aside, and the judgment of the circuit court reversed in its entirety, and the cause remanded for another trial.

I therefore respectfully dissent.