108 So.2d 378

John W. BARNES

v.

SAND MOUNTAIN ELECTRIC COOPERATIVE.

7 Div. 498.

Court of Appeals of Alabama.

Oct. 28, 1958.

Rehearing Denied Dec. 2, 1958.

C. M. T. Sawyer, III, and Leonard L. Crawford, Fort Payne, for appellee.

HARWOOD, Presiding Judge.

The complaint in this case contained two counts.

Count 1 claimed damages because of defendant's negligent failure to supply electrical current to his premises, as per agreement, the said failure proximately resulting in the loss of 450 broiling size chickens which smothered to death because the darkness caused by the interruption of the electrical service caused them to huddle or hover together.

Count 2 is substantially the same as count 1, except that it avers that plaintiff's damages resulted from the defendant's failure to restore the interrupted flow of electricity within a reasonable time.

The defendant filed nine pleas. The first three were in substance pleas of the general issue. Pleas 4, 5, and 6, averred that the

Barnes & Carnes, Albertville, for appellant.

plaintiff's damages resulted from an Act of God, i. e., an electrical storm. Plea 7 set up as a defense a rule of the defendant co-operative to the effect that it was not liable for any interruption of service to members. Pleas 8 and 9 averred the contributory negligence of the plaintiff in not preventing the huddling of the chickens.

Plaintiff's demurrer to plea 7 was sustained, and issue was joined on the pleadings as made by the complaint and pleas 1, 2, 3, 4, 5, 6, 8, and 9.

Since in our opinion certain rulings on evidence necessitate a reversal of this judgment we will only outline the evidence in a most general manner.

The evidence presented by the plaintiff tended to show that his premises were supplied with electrical current by the defendant; that about 3:20 p. m. on 21 March 1955 there was an interruption in the flow of current to his premises; that he went to Fyffe around 4:00 p. m. and had Curtis Hammonds call the defendant and report the failure of the electrical power. Mr. Hammonds testified that Mr. Stewart, president of the defendant, stated he would get some men right out. Again, around 6:00 p. m. the defendant was again contacted by Mr. Hammonds who informed the party to whom he talked at defendant's headquarters that plaintiff was "losing a lot of chickens, and they had called earlier for someone to check their lights out there. They were out of power and losing chickens, and lots of chickens died at that time." The party to whom Mr. Hammonds talked told him there was supposed to be someone out there.

About dark, the plaintiff, who was a poultry raiser, went into one of his chicken houses, in which he had a large number of chickens about seven weeks old, and found that the chickens were huddling together in bunches. He attempted to separate them, but was not too successful. Eventually, some eleven or twelve other people came to aid the plaintiff in his efforts. Car lights were turned on the chicken house, and flashlights procured. Despite these efforts, some 530 chickens were lost before the current was restored around 8:45 p. m.

It was stipulated between the parties that the defendant was at the time of the trial, and at the time of the event sued on, a corporation organized and operating under Chapter 3, of Title 18, Code of Alabama, 1940.

This Chapter (Sections 31–59, Title 18, Code of Alabama 1940) pertains to the organization and operation of electric cooperatives.

The defense evidence was directed to showing that there had been electrical storms in various parts of DeKalb County on the afternoon in question, and that the interruption in plaintiff's current resulted from a blown fuse in the transformer serving the plaintiff, caused by an overload of current resulting from lightning.

The jury returned a verdict in favor of the defendant, and plaintiff's motion for a new trial being overruled, he perfected his appeal to this court.

During the direct examination of defendant's witness, Mr. M. C. Stewart, who had been General Manager of the defendant cooperative for seventeen years, the record shows the following:

"Q. Is the co-operative a non-profit organization?

"Mr. Barnes: We object to whether it is a non-profit organization or not.

"Mr. Sawyer: They brought it out and we have a right to ask. They brought the subject out.

"Mr. Barnes: I haven't asked you one question.

"Mr. Sawyer: Your stipulated it.

"The Court: Objection overruled.

"Mr. Barnes: We except.

"A. Yes, sir. It is a non-profit or-ganization, organized to bring services to rural people at the lowest cost possible.

"Mr. Beck: We move to exclude the answer, not responsive to the question asked.

"The Court: Motion overruled.

"Mr. Beck: We except.

\* \* \* \* \* \*

"Q. Now, I will ask you, Mr. Stewart, if you know then how many people in DeKalb County the co-operative serves?

"Mr. Beck: We object on the grounds it is incompetent, irrelevant and immaterial, how many members served, only question served this man.

"Mr. Sawyer: In the area we want to show.

"Mr. Crawford: Follows the law of general set up and organization.

"Mr. Carnes: The general set up is immaterial.

"Mr. Beck: We could go all day on that and not get to the point.

"The Court: Are you asking now on March 21, 1955?

"Mr. Sawyer: March 21st. I will state it that way.

"The Court: Objection overruled.

"Mr. Beck: We except.

"A. I would say we served approximately seven thousand on March 21, 1955 in that area.

"Q. Approximately how many miles, Mr. Stewart, is it from the lower end of the county, or was it at this time up to the north end of the county that the co-operative served?

"Mr. Beck: We object. It is irrelevant, incompetent and immaterial.

"The Court: Objection overruled.

"Mr. Carnes: We except.

"A. The length of the county. I would say some fifty or fifty-five miles."

■ To be competent, evidence must be relevant, that is, it must tend to prove, or disprove, the issue, or issues being litigated. Magee v. Billingsley, 3 Ala. 679; Southern Railway Company v. Montgomery, 229 Ala. 456, 157 So. 854; Birmingham Baptist Hospital v. Blackwell, 221 Ala. 225, 128 So. 389.

■ Ordinarily, unless directly involved in the determination of the measure of damages, the financial status of parties involved in litigation is immaterial, and evidence to such effect is improper. Hartford Fire Insurance Company v. Armstrong, 219 Ala. 208, 122 So. 23; Metropolitan Life Insurance Company v. Carter, 212 Ala. 212, 102 So. 130. Nor is it proper, in argument, to refer to the "power" of a litigant. Birmingham Water Works Company v. Williams, 228 Ala. 288, 153 So. 268. Clearly the admission of evidence tending to establish the power, popularity, or influence of a defendant is improper and erroneous.

Counsel for appellee argues that since it was stipulated that the defendant was organized under the provisions of Chapter 3, supra, which provides for the organization of "cooperative, non-profit, membership corporations" for the purpose of supplying electric energy, the defendant should be permitted to show that it was a non-profit organization.

It should be noted in this connection, that among the provisions of Section 33, of said chapter, enumerating the powers of such cooperatives, the very first power granted is: "To sue and be sued in its corporate name."

■ Therefore whether the defendant was a profit, or a non-profit corporation was immaterial.

The answer of the witness to the effect that it was a non-profit organization, "organized to bring service to rural people at the lowest cost possible" emphasized the irrelevancy of the evidence sought to be elicited by the question as to whether the cooperative was a non-profit organization.

■ Added to the above was the evidence, admitted over the plaintiff's objection, to the effect that the defendant served approximately seven thousand people, covering the length of DeKalb County, some fifty or fifty-five miles.

The chief tendency of such evidence could be but to impress upon the minds of the jury popularity, power, and influence, of the defendant cooperative, and its "pro bono publico" character.

All of such implications could have no proper place in the proceedings below. Being without the scope of the litigable issues, the admission of such evidence was erroneous.

Appellee has also filed a motion to strike appellant's brief and argument, because not timely filed. It appears however that on 26 September 1957, this court granted to the appellant fifteen days additional for filing his brief, and appellant did file his briefs within this additional time. The motion to strike is therefore denied.

Reversed and remanded.

## On Rehearing.

■ Counsel for appellee in his brief in support of his application for rehearing requests that we show that in his application for extension of time for filing his brief counsel for appellant asked for an extension of ten days. Such is correct.

The petition for extension of time for filing briefs was filed in this court on 26 September 1957, the record having been filed in this court on 28 August 1957. This was within the thirty day period within which appellant could file his briefs.

The basis for the request was "due to cases during the month of September in both Marshall and Etowah Counties counsel for appellant has not had time to prepare the same."

The certificate of service on opposing counsel on the petition recites that the attorney for the appellee had orally consented to an extension of time prayed for in the petition.

Supreme Court Rule 12, Code 1940, Tit. 7 Appendix, provides, among other things:

"Upon written application, served upon opposing counsel, the court, or a justice thereof, for good cause shown, may extend the time for the filing of any of appellant's or appellee's brief for not exceeding fifteen days."

Written application for an extension of time having been properly presented, an order was entered by the Presiding Judge of this court on 26 September 1957 granting an additional fifteen days to appellant within which to file briefs. This being a matter of discretion, it was the view of the Presiding Judge that, upon the showing made in the petition, counsel for appellant should be allowed the full fifteen days additional permitted to be granted under Rule 12, supra, rather than the ten days requested.

Appellant's briefs were filed within the additional time granted, and we adhere to our original refusal to strike appellant's briefs because not timely filed.

The original opinion has been revised in one aspect, said revision in no way affecting the conclusion originally reached.

Application overruled.