The only issues on this appeal involve evidentiary rulings made by the trial judge in a suit for breach of an oral agreement to form a joint venture to develop land.
Around the first part of 1980, the plaintiff/appellant Clyde Ryan, a building contractor, and the defendant/appellee John Acuff, began discussions about the possibility of forming a joint venture to develop parcels of land owned by the parties. *Page 1246 
Acuff owned approximately seventy-seven acres and Ryan approximately four acres of land. The property was contiguous and had no mortgages or other encumbrances.
Ryan testified that he had built over one hundred residential buildings and one commercial building in Huntsville, and that these projects had been financed through Towne Realty, Inc., which was principally owned by him. Acuff was a retired banker who had also previously developed property.
An engineering firm was hired to do preliminary work on the proposed subdivision; the parties contributed equally to all expenses incurred in these engineering studies. Ryan met with the chairman of the City Planning Commission on several occasions to discuss the possibility of the development, and also met with a local banker to discuss financing. There were at least three meetings between the parties to discuss the possible joint venture, but there was conflict in the testimony as to who had made the initial offers to form the joint venture. Ryan had his attorney draft at least three written proposals for the joint venture, and although Ryan signed one of the proposed agreements, Acuff refused to sign any. At a meeting between Ryan and Acuff attended by attorneys for the parties, Acuff's attorney recommended that Acuff not enter into the venture because of financing problems, Acuff's antipathy to mortgaging his property, and the disparity of assets each party was to convey to the venture.
The written proposal signed by Ryan would have required each party to convey his property to a corporation owned by Ryan. In return each party would receive an equal number of shares of corporate stock and a mortgage from the corporation. No decision had been reached as to how the venture was to be financed, how approval would be gained from the appropriate city agencies, nor how access would be obtained, as the property was landlocked. Ryan had orally made the agreement contingent on access. No deeds or mortgages were ever drawn on the property, nor were descriptions attached to the proposal which was signed by Ryan only.
During this same period the joint venture was being discussed, Acuff was rebuilding a commercial building, which had burned, on a lot not connected with the property described above. The building was to be rented by the previous tenant, Firestone, Inc., which had provided plans for the building. Ryan unquestionably aided in the construction of this building, but there was conflict in the testimony regarding Ryan's participation in this project, and its connection with the alleged joint venture. Ryan claimed he had agreed to act as contractor for a "consulting fee" and expenses. The fee was for $2,000 which Ryan claimed was far below what his services were worth. No testimony was admitted as to the actual worth of these services. According to Ryan, this work was completed as a part of the overall joint venture agreement, but Acuff disputed this and testified there was no connection between the two developments, that Ryan was only a "helper" and the $2,000 paid Ryan was payment in full for his services. Acuff introduced two checks endorsed by Ryan which totaled $2,000 with a notation "paid in full" for services on Firestone building on the second check. Acuff also introduced a building permit on the building which had been obtained by another contractor. Acuff also offered depositional testimony of Ryan's attorney that the construction of the commercial building was not contingent on the joint venture.
Ryan originally sued for specific performance of a joint venture agreement and breach of a joint venture agreement and claimed damages for "loss of prospective profits." He repeatedly amended his complaint and at one time it contained seven separate counts. At trial, however, the case was tried before a jury on three counts; one for fraud and deceit, one for work and labor done, and one for breach of a joint venture agreement with damages sought for "loss of prospective profits." The joint venture count did not include Ryan's work on the commercial building. At the close of the evidence, Ryan amended his breach of *Page 1247 
contract claim and prayed for $35,000 in damages for work and labor done in furtherance of an oral joint venture agreement. The trial court, on motion, directed verdicts for Acuff on the fraud and deceit count and on the work and labor done count. On appeal, Ryan does not raise any of these issues regarding those rulings.
The plaintiff's case was submitted to the jury on the question of whether there had existed an oral contract between the parties to form a joint venture to develop land. The jury found for the defendant Acuff.
On appeal, Ryan claims the trial judge erroneously admitted evidence which was prejudicial to his case; we address these evidentiary issues only.
 I
We first address the question of the admissibility of the income tax returns of Towne Realty, Inc., which was not a party to the suit. On direct examination, Ryan introduced evidence of the cost of developing the property, and on cross-examination, testified the cost of development would be $1,300,000. He was then asked whether he personally could contribute a similar amount to the venture and answered in the negative. He was then asked if the money was available through his corporation and he answered: "I don't know, I don't have my tax records." No objection was made to these questions by counsel for Ryan. Later in the cross-examination of Ryan, Acuff's counsel offered the previous three years' tax returns of Towne Realty, Inc. into evidence. Counsel for Ryan objected to the admission of the income tax returns on the ground that the evidence was irrelevant because Towne Realty, Inc. was not a party. The trial judge overruled the objection. Acuff also offered into evidence the personal tax returns of Ryan for the same years, and they were admitted without objection.
On appeal, Ryan argues that admission of the tax returns for Towne Realty, Inc. was error. On the one hand, he argues that Towne Realty, Inc. was not a party to the litigation or even remotely involved; he claims that the evidence was inadmissible on this ground. On the other hand, he argues the admission of the evidence was error because the financial condition of the parties is not material, and the admission of Towne Realty's income tax return constituted an admission of his financial condition.
Acuff argues the records were material because his primary reason for not entering into an agreement with Ryan was Ryan's financial condition, and that Ryan had made his financial condition material on the question of whether there was an oral agreement to form a joint venture; therefore, argues Acuff, Ryan's financial condition was probative of whether there was even a possibility of an agreement. We find no prejudicial error in the admission of these returns. Trial judges have wide discretion to exclude or admit evidence even of minor probative value on issues litigated in the cases. The test is that the evidence must only shed light on the main inquiry, and not withdraw attention from the main inquiry. Cherry v. Hill,283 Ala. 74, 214 So.2d 427 (1968); see also, C. Gamble, McElroy'sAlabama Evidence § 21.01 (6) (3rd Ed. 1977).
Here, there was evidence that Ryan was the alter ego of the corporation, Towne Realty, Inc., and that Ryan's career as a builder in Huntsville had been conducted through the corporation, and it would have been through the corporation that financing would have been obtained for the development. Ryan's capability to perform the proposed joint venture was an issue at trial, particularly his ability to get financial backing.
We also note that a number of communications made between Ryan and Acuff involved Towne Realty. The cost estimate was prepared in the name of Towne Realty; two expense checks for "preliminary" work were drawn on Towne Realty's account, and the letter written by Ryan to Acuff terminating their business relationship was done in the name of Towne Realty. There was also evidence that the last joint venture engaged in by Ryan was carried out in the *Page 1248 
name of Towne Realty. As we view the evidence, the trial court could have concluded that the thrust of the testimony complained of, the admission of Towne Realty's income tax returns, was not to show Ryan's wealth to prejudice the jury against him, but to show Ryan's lack of wealth and, therefore, his inability to obtain financing for large tracts of land.
We are familiar, of course, with the general rule that the financial status of parties involved in litigation is immaterial, Miller v. Dacovich, 355 So.2d 1109 (Ala. 1978);Barnes v. Sand Mountain Electric Coop., 40 Ala. App. 88,108 So.2d 378, cert. denied, 268 Ala. 698, 108 So.2d 382 (1958);City National Bank v. Nelson, 214 Ala. 297, 107 So. 849 (1926), but in this case, we do not find the trial judge erred in reversal, because Ryan's financial ability to carry out the alleged joint venture was one of the issues litigated.
 II
Ryan argues that the trial judge, although he allowed a witness to be qualified as an expert, nevertheless refused to permit the expert to testify regarding the reasonable value of the services Ryan performed in connection with the so-called Firestone building. Ryan correctly cites to us the rule of law regarding the admissibility of expert testimony, but we hold that those rules are inapplicable to this case. In the first place, the proffered evidence related to the Firestone building, and there was no question asked the expert concerning any aspect of the alleged joint venture. All claims relating to work on the Firestone building were deleted before they were submitted to the jury, either by voluntary withdrawal by Ryan or by directed verdict on the part of the court. Consequently, the jury did not have any issue relating to the Firestone building before it. Even though Ryan has cited to us correct principles of law concerning expert testimony, he has failed to show that the rulings of the trial court were prejudicial in this case.
 III
Ryan next argues that it was error for the trial court to refuse to allow him to testify as to the reasonable value of the services he performed on the Firestone building. Ryan argues, in brief:
 "Having been denied the testimony of an expert witness, Ryan attempted to establish the value of his service by direct testimony. Counsel for Ryan recalled Ryan to the stand and put the following question to him:
 "___ Mr. Ryan, I ask you, do you have any opinion as to the reasonable value, on an hourly charge basis, of the services you performed in rebuilding the Firestone Building and in doing the land development work that you have testified to."
Again, Ryan correctly cites to us the law that a person who performs services for another is competent to testify as to the reasonable value of his own services after they have been described with reasonable particularity. In this case, however, we find no prejudicial error resulting when Ryan was not permitted to testify concerning the "reasonable value, on an hourly charge basis, of the services [he] performed in rebuilding the Firestone Building," in view of the evidence that Ryan accepted $2,000 as the amount of compensation due him for the work he performed. Under the facts of this case, we fail to find that the trial judge's action was prejudicial. Rule 45, Ala.R.App.P. There was no testimony that Acuff agreed to pay for Ryan's preliminary efforts in connection with the alleged joint venture, and as we have held regarding the expert's testimony, Ryan's proposed testimony regarding any work done by him on the Firestone building is not an issue on this appeal.
 IV
Ryan's last argument is that it was error to admit evidence of a contradiction, on Ryan's part, because the evidence pertained to a prior immaterial matter. Ryan testified that he had been successful in the past as a builder, that Acuff took the initiative *Page 1249 
in proposing the joint venture, and that he had never in the past had an attorney prepare joint venture proposals. Acuff called as a witness Linda Edwards Hamlett to prove that Ryan had previously initiated joint venture proposals. After Hamlett had testified that she had entered into a joint venture with Ryan, counsel for Ryan objected to the admission of any prior joint ventures between Ryan and any third parties as being immaterial. The trial judge sustained the objection. Counsel for Acuff then asked Hamlett if ". . . during any prior joint ventures you had with Mr. Ryan, did he bring proposed joint venture contracts for your signature"? Counsel for Ryan objected on materiality grounds. Counsel for Acuff stated he was offering the evidence for impeachment purposes and the trial judge held the evidence was admissible. Counsel for Acuff then attempted to have admitted into evidence a written proposal purportedly drafted by Ryan's attorney for a joint venture with Hamlett. Counsel for Ryan objected, saying: "The fact that he [Ryan] brought them [proposals] in is what he [counsel for Acuff] is trying to get in, and that's fine, but the document itself is irrelevant." (Emphasis added.) The document was not admitted, but the trial judge allowed Acuff's attorney to ask questions about prior proposals by Ryan to Hamlett, and she testified that Ryan had actively pursued a joint venture by bringing draft proposals to her, that she never signed those agreements, that she and Ryan had entered into an oral agreement to build and sell two houses, and that the venture had been financially unsuccessful. Counsel for Ryan cross-examined Hamlett and she testified that Ryan had sued her on the venture and had won a verdict of $500.
We hold the testimony of Hamlett was material to issues in the case. Ryan attempted throughout the trial to portray the joint venture as a plan initiated by Acuff despite his reluctance. Ryan testified, and his attorney argued, that Acuff actively sought to persuade Ryan to engage in the joint venture, and then refused to consummate the transaction after Ryan had expended considerable time and effort in furtherance of the joint venture. The thrust of the testimony and argument was that Ryan possessed experience and expertise which Acuff needed to develop his (Acuff's) lands and that Acuff "tricked" Ryan into performing services for Acuff to the exclusion of other construction efforts in which Ryan would otherwise have been engaged.
Ryan, in fact, testified that Acuff made an initial "joint venture" offer to him which he (Ryan) declined. Ryan further testified that Acuff, "within a matter of days," made a second proposal, which Ryan also declined. Ryan testified that Acuff made him yet a third offer, which Ryan accepted. He further testified "I never approached him once" and that all the initiative was on Acuff's part. Ryan even testified that he never even made a counter-proposal during the repeated proposals from Ryan.
The thrust of Ryan's testimony was that he was not particularly interested in participating in a joint venture until actively persuaded by Acuff to do so, that his wide experience in the construction business and his expertise was valuable to Acuff, and that Acuff used persuasion (and perhaps artifice) to enlist his aid in the project.
Acuff, on the other hand, consistently testified that he was never interested in mortgaging his property, particularly at 81 years of age. He testified that Ryan was simply a "helper" on the Firestone building project and that Ryan initiated all discussions concerning any joint venture. The thrust of Acuff's position was that Ryan was a "promoter" who actively sought access to the Acuff property, which could potentially yield him a profit of $2,895,360, and that Ryan had never been successful in developing his own much smaller acreage, and he saw a great opportunity to make money by jointly developing the far more valuable Acuff lands.
With such a stark discrepancy between the Ryan version of events and the version presented by Acuff, Acuff was certainly entitled to cross-examine Ryan closely on matters which would test his credibility on *Page 1250 
such critical issues as (1) who actually initiated the joint venture proposal, (2) who stood to gain and who stood to lose by the proposal, (3) the feasibility of the proposed joint venture, (4) the true nature of any "expertise" of Ryan, (5) the past history of Ryan in construction, (6) the past history of Ryan in joint ventures, (7) who had represented Ryan in past joint ventures, and (8) the financial ability of Ryan to participate in a joint venture of the magnitude he proposed. We hold that the questions asked Ryan on cross-examination, and the impeachment evidence offered to contradict the answers given by Ryan, were not immaterial but were very pertinent to the above issues.
Questions of materiality, relevancy, and remoteness rest largely with the trial judge, and his rulings must not be disturbed unless his discretion has been grossly abused.Dorcal, Inc. v. Xerox Corp., 398 So.2d 665 (Ala. 1981);Costarides v. Miller, 374 So.2d 1335 (Ala. 1979). We hold the trial judge did not abuse this discretion.
Because we affirm the judgment, we have not addressed the question of whether the oral joint venture agreement sued upon violated the statute of frauds. The appellee raised the statute of frauds in his answer, at trial, and on appeal. We do note that an oral joint venture agreement to develop land wherein property is to be conveyed comes within the bar of the statute of frauds. Code 1975, § 8-9-2, Wilson v. Southside ShoppingCenter, Inc., 280 Ala. 615, 197 So.2d 267 (1967), but since we affirm the judgment on other grounds, we do not consider a discussion of the issue necessary.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ.. concur.