RICHARD L. HOLMES, Retired Appellate Judge.
The present case began when Hooper Auction Company, Inc. (Hooper), filed an action for declaratory judgment and interpleader regarding proceeds from the sale of certain cattle in June 1991. The action named Daniel Thomas and Teddy Watson as defendants.
Thomas and Watson answered and filed cross-claims. Thomas alleged in his cross-claim that in June 1991 Watson had wrongfully converted 26 head of cattle belonging to Thomas by penning and hauling these cattle to the auction. In his cross-claim Watson requested damages for slander. Watson also requested, pursuant to Ala.Code 1975, §§ 3-2-4(c) and 3-5-3, compensation for the damage to his crops, which, he alleged, was caused by the cattle.
Hooper deposited the proceeds from the sale with the clerk of the court. The trial court dismissed and discharged Hooper from any further and additional liability in the matter.
The case proceeded to a trial by jury on the cross-claims filed by Thomas and Watson. The jury returned a verdict in favor of Thomas and against Watson and assessed damages in the amount of $15,591.
Watson appeals. This case is before this court pursuant to Ala.Code 1975, § 12-2-7(6). We affirm.
The dispositive issue is whether the actions of Watson supported a finding that Watson was hable to Thomas for conversion of the 26 head of cattle owned by Thomas.
*86 In order to establish a claim of conversion, the plaintiff must prove that the defendant exerted control over property to which the plaintiff had title and of which the plaintiff was entitled to immediate possession. Rice v. Birmingham Coal & Coke Co., 608 So.2d 713 (Ala.1992).
Watson argues that his actions do not constitute conversion because when he penned the cattle and transported them to the stockyard, he was acting under the directions of an investigator for the State of Alabama Stockyard and Brands. Watson further contends that his actions did not constitute conversion because he was given the right to pen the stray cattle under Ala.Code 1975, §§ 3-2-1 and 3-5-6.
Section 3-2-1 provides, in pertinent part:
“Any person who finds running at large about ... the residence or premises of which he has charge any ... cattle, ... the owner of which is unknown, may take up such animal as an estray to be disposed of as provided in sections 3-2-2 through 3-2-4.”
(Emphasis added.)
Section 3-5-6 provides, in pertinent part:
“Any person who is ... in the lawful possession of any land or the agent of any such person shall have the right to take possession of any livestock or animal found at large, uncontrolled, ... on the premises of which he has charge and the owner of such livestock or animal, when so taken up, shall be personally notified ... within 24 hours after the taking up of such livestock or animal, and by posting notice as provided in section 3-5-8.”
(Emphasis added.)
At trial, Watson admitted that when he penned the cattle in June 1991, he did not contact any of the adjoining landowners to inquire as to whether they had any cattle missing. Watson also admitted that he had a feeling that the cattle belonged to Thomas because cattle belonging to Thomas had been on the property on previous occasions, but he was not absolutely certain that the cattle belonged to Thomas and he did not contact Thomas.
At trial, Thomas testified that there were several occasions between March and June 1991 where either his fence was cut and pulled back or his gap was left open. Thomas also testified that other cattle were missing between March and June 1991. We would note that Thomas testified that on the evening before Watson penned the cattle, Thomas was near his property line, that he noted there was nothing wrong with the fence, and that the gap was tightly closed. However, when he checked the area the next morning, the gap was open, and there was an empty feed sack at the property line.
We would also note that while Watson and Thomas had a good relationship in the past, that relationship had deteriorated by 1991. In fact, the parties did not get along well at ah.
The role of the jury is to consider all the evidence and to draw its own conclusions therefrom. Star Freight, Inc. v. Sheffield, 587 So.2d 946 (Ala.1991). The jury is to determine the weight to be accorded the testimony of the witnesses. Star Freight, Inc., 587 So.2d 946.
In the present case, as seen from the above, there was evidence and reasonable inferences therefrom to support the jury’s finding that Watson was guilty of conversion of the 26 head of cattle belonging to Thomas.
Watson raises two other issues. He contends that the trial court erred when it allowed certain expert testimony regarding crop damage because the witness was not properly qualified as an expert witness. However, the trial court is accorded broad discretion in deciding who is qualified to testify as an expert, and its determination will not be disturbed on appeal unless the trial court abused its discretion. General Motors Corp. v. Johnston, 592 So.2d 1054 (Ala.1992).
Watson also contends that the trial court committed reversible error when it admitted his tax returns into evidence. The trial court is granted wide discretion in determining the relevancy of the evidence, and its determination will not be disturbed on appeal unless it is clear that error was com *87 mitted. Harper v. Baptist Medical Center—Princeton, 341 So.2d 133 (Ala.1976). Further, we note that the trial court is given broad discretion in excluding or admitting evidence on issues litigated in the case. Ryan v. Acuff, 435 So.2d 1244 (Ala.1983).
After reviewing the record, we find that if the trial court erred in admitting the above evidence, such error was harmless error. Rule 45, A.R.A.P.
In view of the above, this case is due to be affirmed.
Thomas’s request for attorney fees is denied.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.